1  ROGERS JOSEPH O'DONNELL
   RENÉE D. WASSERMAN (State Bar No. 108118)
2  ALEXIS JANSSEN MORRIS (State Bar No. 200264)
   ANDREW B. LUSTIGMAN
3  E-mail address: rwasserman@rjo.com

4  THE LUSTIGMAN FIRM, P.C.
   SHELDON S. LUSTIGMAN (admitted *pro hac vice*)
5  ANDREW B. LUSTIGMAN (admitted *pro hac vice*)
   149 Madison Avenue, Suite 805
6  New York, New York 10016
   Telephone: 212.683.9180
7  Facsimile: 212.683.9181
   E-mail address: andy@lustigmanfirm.com
8
   Attorneys for Defendants
9  MEDLAB, INC., PINNACLE
   HOLDINGS, INC., METABOLIC
10 RESEARCH ASSOCIATES, INC.,
   U.S.A. HEALTH, INC. and
11 L. SCOTT HOLMES

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14

15 FEDERAL TRADE COMMISSION,          Case No. CV-08-0822-SI

16              Plaintiff,

17       vs.

18 MEDLAB, INC., et al.,
                                      DATE: July 18, 2008
19              Defendants.           TIME: 9 am
                                      CTRM: 10, 19ᵗʰ Floor
20

21

22

23       **DEFENDANTS' OPPOSITION TO FTC'S MOTION TO
         STRIKE AFFIRMATIVE DEFENSES, JURY DEMAND
24       AND NON-EXISTENT MOTION TO DISMISS**

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION…….........................................................................................2

I       A MOTION TO STRIKE AFFIRMATIVE DEFENSES IS
        DISFAVORED AND SHOULD BE DENIED…........................…............3

II.     DEFENDANTS' AFFIRMATIVE DEFENSES ARE MERITORIOUS…...............4

    A.   LACHES AND ESTOPPEL BASED ON THE FTC'S DELAY
             ARE EXPRESSLY ALLOWED AND REQUIRE A FACTUAL
             DETERMINATION AFTER DISCOVERY (Second Affirmative
             Defense)…………………………………………………............4

    B.   THE FTC FAILED TO EXHAUST ADMINISTRATIVE
             REMEDIES  (Third Affirmative Defense)…………….…….....……..8

    C.   THE FTC'S MAXIMUM RECOVERY IS CAPPED AT
             DEFENDANTS' PROFITS, AND IN THE EVENT OF A JUDGMENT
             IN THE FTC'S FAVOR, IT CAN RECOVER DEFENDANTS' PROFITS
             ONLY; DEFENDANTS ARE ENTITLED TO AN OFFSET OF ALL
             EXPENSES (Fourth and Twelfth Affirmative Defenses)……….…….……9

    D.   TRUTHFUL COMMERCIAL SPEECH WARRANTS FIRST
             AMENDMENT PROTECTION (Fifth Affirmative Defense)…….………..12

    E.   THE FTC HAS FAILED TO PROVIDE FAIR NOTICE OF WHAT
             CONSTITUTES A "REASONABLE BASIS" (Sixth Affirmative
             Defense)……………………………………………………..........14

    F.    DEFENDANTS MAY CHALLENGE THE FTC'S ARBITRARY
             AND CAPRICIOUS STANDARD (Sixth and Thirteenth Affirmative
             Defenses)…..………………………………………….……........16

    G.   BECAUSE THE PRODUCTS WERE SOLD WITH A MONEY
             BACK GUARANTEE OF SATISFACTION, CONSUMER WAIVER
             IS A PROPER AFFIRMATIVE DEFENSE TO A CLAIM OF
             CONSUMER REDRESS (Ninth Affirmative Defense)……….………..17

    H.   THE CHALLENGED CLAIMS HAVE CEASED, SO THE FTC'S
             REQUESTS FOR INJUNCTIVE RELIEF ARE MOOT  (Eleventh
             Affirmative Defense)……………………………………………18

    I.    INJUNCTIVE RELIEF SHOULD NOT ISSUE DUE TO THE
             PRESENCE OF AN ADEQUATE REMEDY AT LAW
             (Tenth Affirmative Defense)…....................................................20

III.    DEFENDANTS ARE ENTITLED TO A JURY TRIAL TO THE EXTENT
        THE FTC SEEKS A PUNITIVE REMEDY OR ANCILLARY MONETARY
        RELIEF……………..…................................................…................20

Page i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IV.    THE FTC'S OPPOSITION TO A NON-EXISTENT MOTION TO
         DISMISS SHOULD BE DENIED.........................................................22

CONCLUSION...........................................................................................23

CASE NO: CV-08-0822-SI

# TABLE OF AUTHORITIES

## CASES

Page

*Advanced Microtherm. Inc. v. Norman Wright Mech. Equip. Corp.,*
No. 04-02266, 2004 WL 2075445 (N.D. Cal. Sept. 15, 2004).......................3

*Beacom v. EEOC,*
500 F.Supp. 428 (D. Ariz. 1980)...............................................6

*Beneficial Corp. v. FTC,*
542 F.2d 611 (3rd Cir. 1976).................................................13

*Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.,*
217 F.Supp.2d 1028 (C.D. Cal. 2002)........................................3

*Central Hudson Gas & Electric Corp., v. Public Service Commission of New York,*
447 U.S. 557 (1980).........................................................13

*Colaprico v. Sun Microsystems, Inc.,*
758 F. Supp. 1335 (N.D. Cal. 1991).........................................3

*Conopco, Inc. v. Campbell Soup Co.,*
95 F.3d 187 (2d Cir. 1996)..................................................7

*Corniel-Rodriguez v. INS,*
532 F.2d 301 (2d Cir. 1976).................................................6

*Diener's Inc. v. FTC,*
494 F.2d 1132 (D.C. Cir. 1974)..............................................16

*Enrico's Inc. v. Rice,*
730 F.2d 1250 (9th Cir.1984)................................................19

*FDIC v. Harrison,*
735 F.2d 408 (11th Cir.1984).............................................7, 18

*Ford Motor Co. v. FTC,*
547 F.2d 954 (6th Cir. 1976) *cert. denied*, 431 U.S. 915 (1977)............16

*FTC v. Affordable Media, LLC,*
179 F.3d 1228 (9th Cir. 1999)...............................................19

*FTC v. Braswell,*
No. CV 03-3700 DT (PJWX) (C.D. Cal.).....................................5, 6, 11

*FTC v. Bronson Partners, LLC,*
No. 3:04CV1866(SRU), 2006 WL 197357 (D. Conn. Jan. 25, 2006)........10, 13, 19

*FTC v. Debt Solutions, Inc.,*
2006 WL 2257022 (W.D. Wash. 2006)..........................................7

Page iii

1   *FTC v. Enforma Natural Products, Inc.*,
      362 F.3d 1204 (9th Cir. 2004)………………..……………….............15

2

3   *FTC. v. Evans Products Co.*,
      775 F.2d 1084 (9th Cir. 1985)……………………………………….20

4   *FTC v. Figgie International, Inc.*,
      994 F.2d 595 (9th Cir. 1993)……………………………………10, 21

5

6   *FTC v. Hang-Ups Art Enterprises, Inc.*,
      1995 WL 914179 (C.D. Cal. Sept. 27, 1995)……………………………4,6

7   *FTC v. Kuykendall*,
      371 F.3d 745 (10th Cir. 2004)………………………………………12

8

9   *FTC v. Magazine Solutions, LLC*,
      2007 WL 2815695 (W.D. Pa. 2007)………………………..…………..7

10  *FTC v. Magui Publishers, Inc.*,
      Civ. No. 89-3818 RSWL(GX), 1991 WL 90895 (C.D. Cal. Mar. 28, 1991),
11    *aff'd*, 9 F.3d 1551 (9th Cir. 1993)……………………………………11

12  *FTC v. Medicor, LLC*,
      No. CV011896CBMEX, 2001 WL 765628 (C.D. Cal. June 26, 2001)…………….4

13

14  *FTC v. Minuteman Press, LLC*,
      53 F.Supp.2d 248 (E.D.N.Y. 1998)………………………….…………22

15  *FTC v. QT, Inc.*,
      448 F.Supp.2d 908 (N.D. Ill. 2006), *aff'd*, 512 F.3d 858 (7th Cir. 2008)…...9, 10, 11, 16

16

17  *FTC v. Sage Seminars, Inc.*,
      No. C 95-2854 SBA, 1995 WL 798938 (N.D. Cal. Nov. 2, 1995)………………19

18  *FTC v. Universal-Rundle Corp.*,
      387 U.S. 244 (1967)……………………………………………16

19

20  *FTC v. Verity Int'l, Ltd.*,
      443 F.3d 48 (2d Cir. 2006)………………………………………..9, 11

21  *Hart v. Baca*,
      204 F.R.D. 456 (C.D. Cal. 2001)…………………………………..3

22

23  *Hot Wax, Inc. v. Turtle Wax, Inc.*,
      27 F.Supp.2d 1043 (N.D. Ill.,1998), *aff'd*, 191 F.3d 813 (7th Cir. 1999)……………7

24  *In the Matter of Basic Research. L.L.C.*,
      FTC Docket No. 9318, 2004 WL 2682854 (F.T.C.) (Nov. 4, 2004)……………….13

25

26  *Johnson Product Co. v. FTC*,
      549 F.2d 35 (7th Cir. 1977)………………………………………16

27  *Joint Stock Society v. UDV North America, Inc.*,
      53 F.Supp.2d 692 (D.Del. 1999), *aff'd*, 266 F.3d 164 (3rd Cir. 2001)……………….7

28

CASE NO: CV-08-0822-SI

*Lazar v. Trans Union LLC,*
  195 F.R.D. 665 (C.D. Cal. 2000)....................................................................3, 4

*Linkous v. United States,*
  142 F.3d 271 (5th Cir. 1998)...........................................................................6

*Office of Personnel Management v. Richmond,*
  496 U.S. 414 (1990).....................................................................................5

*Pearson v. Shalala,*
  164 F.3d 650 (D.C. Cir. 1999).........................................................12, 14, 15

*Resolution Trust Corporation v. Gregor,*
  No. 94 CV 2578, 1995 WL 931093 (E.D.N.Y. Sept. 29, 1995)...................7, 18

*Rumsfeld v. United Technologies Corporation,*
  315 F.3d 1361(Fed. Cir. 2003)........................................................................6

*SCM Corp. v. FTC,*
  565 F.2d 807 (2d Cir. 1977)..........................................................................19

*SEC v. Blatt,*
  583 F.2d 1325 (5th Cir. 1978).......................................................................11

*SEC v. Lorin,*
  76 F.3d 458 (2d Cir. 1996)...........................................................................11

*SEC v. Randy,*
  1995 WL 616788 (N.D. Ill. Oct. 17, 1995)......................................................5

*Tull v. United States,*
  481 U.S. 412 (1987)....................................................................................22

*United States v. Ruby,*
  588 F.2d 697 (9th Cir. 1978)..........................................................................5

*United States v. Summerlin,*
  310 U.S. 414 (1940).....................................................................................4

*U.S. v. Walerko Tool and Engineering Corp.,*
  784 F.Supp. 1385 (N.D. Ind. 1992)................................................................18

*United States v. W.T. Grant Co.,*
  345 U.S. 629 (1953)...............................................................................19, 20

*Weinberger v. Romero-Barcelo,*
  456 U.S. 305 (1982).....................................................................................8

*Yoo v. INS,*
  534 F.2d 1325 (9th Cir. 1976).........................................................................6

*Zacharin v. United States,*
  213 F.3d 1366 (Fed. Cir. 2000).......................................................................6

1

2

## **INTRODUCTION**

3

4

The FTC's Motion to Strike ten of Defendants' well-pled affirmative defenses

5

should be denied because it attempts to eliminate factors highly relevant to the Court's

6

determination of liability and the appropriateness and extent of any consumer or equitable

7

relief. Although the FTC contends that the challenged affirmative defenses are deficient,

8

the FTC has invoked equity in the Complaint and, as such, the principles of equitable

9

jurisprudence should not be suspended. Further, the viability of a number of the

10

affirmative defenses is dependent upon taking discovery, which has just begun.

11

12

This Court should recognize the Motion to Strike for what it is – a preemptive

13

strike designed to foreclose the ability of Defendants to gather the very evidence needed

14

to validate their defenses based on sound principles of equity. Defendants should be

15

allowed a full and fair opportunity to litigate this case. It is well settled that a court

16

should refuse to strike defenses unless they are unquestionably insufficient as a matter of

17

law. The Motion to Strike should be denied and Defendants should be provided with a

18

19

full hearing on the merits of their affirmative defenses after discovery concludes.

20

21

Additionally, Defendants are entitled to a jury trial based on the FTC's pre-trial

22

disclosure which reveals that the FTC is ultimately seeking punitive relief.

23

Furthermore, the FTC's misplaced opposition to what it contends is a motion to

24

dismiss should be denied. Defendants have not yet moved to dismiss, and their reference

25

to such relief as part of the ultimate relief is plainly not a Local Rule 7.2 styled motion.

26

27

28

Opposition to FTC's Motion To Strike Affirmative Defenses
CASE NO: CV-08-0822-SI

1   The FTC provides no authority for its procedural tactic, its claim is meritless, and should

2   be denied.

3
    ## I.    A MOTION TO STRIKE AFFIRMATIVE DEFENSES IS
4           DISFAVORED AND SHOULD BE DENIED

5           "Motions to strike should not be granted unless it is clear that the matter to be

6
7   stricken could have no possible bearing on the subject matter of the litigation." *Colaprico*

8   *v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991) (*citing* 2A J. Moore,

9   Federal Practice ¶ 12.21[2] at 2429 (2d ed.1975)); *see also Cal. Dep't of Toxic*

10  *Substances Control v. Alco Pac., Inc.*, 217 F.Supp.2d 1028, 1033  (C.D. Cal. 2002)
11
12  (motions to strike "generally regarded with disfavor because of the limited importance of

13  pleading in federal practice, and because they are often used as a delaying tactic"); *Lazar*

14  *v. Trans Union LLC,* 195 F.R.D. 665, 669 (C.D. Cal. 2000) (motions to strike "generally

15  viewed with disfavor and are not frequently granted").
16
17          To strike an affirmative defense, the moving party carries the heavy burden of

18  establishing: (1) there are no questions of fact; (2) any questions of law are clear and not

19  in dispute; (3) **under no set of circumstances could the defense succeed**; and (4)

20  presentation of the defense would prejudice the moving party.  Schwarzer, Tashima &
21
22  Wagstaffe, *Federal Civil Procedure Before Trial* §§ 9:381, 9:376, and 9:407 (2003)

23  (emphasis added); *see also Hart v. Baca*, 204 F.R.D. 456, 457 (C.D. Cal. 2001).

24          The FTC bears an extraordinarily high burden on this Motion to Strike. *Advanced*

25  *Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*, No. 04-02266, 2004 WL
26
27  2075445 at *12 (N.D. Cal. Sept. 15, 2004) (denying motion to strike portions of

28  complaint). Importantly, the pleadings under attack are viewed in the light most favorable

to the pleader.  *See Lazar v. Trans Union LLC*, 195 F.R.D. 665, 669 (C.D. Cal. 2000); *see also FTC v. Hang-Ups Art Enterprises, Inc.*, No. CV 95-0027 RMT, 1995 WL 914179 at *2 (C.D. Cal. Sept. 27, 1995).    Moreover, a motion to strike will not be granted if the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined by a hearing on the merits.  *FTC v. Medicor, LLC*, No. CV011896CBMEX, 2001 WL 765628 at *1 (C.D. Cal. June 26, 2001) (citing 5A C. Wright & A. Miller, *Federal Practice and Procedure*, §1381 at 678 (2d ed. 1990)).

## II.  DEFENDANTS' AFFIRMATIVE DEFNSES ARE MERITORIOUS

### A. LACHES AND ESTOPPEL BASED ON THE FTC'S DELAY ARE EXPRESSLY ALLOWED AND REQUIRE A FACTUAL DETERMINATION AFTER DISCOVERY (Second Affirmative Defense)

The FTC is seeking to revisit decade-old conduct as evidenced by the discovery it has propounded relating to conduct dating back to 1996.  *See, e.g.,* Lustigman Decl. at ¶¶1-2 (submitted herewith); Exs. 1(Request To Admit Nos.1 & 3) and 2 (Request For Production Nos. 24-26).  Given that the FTC believes that decade-old conduct is relevant to this action sufficient to warrant affirmative discovery requests, Defendants are entitled to explore their laches and estoppel defenses.[1]  If the advertising at issue is deceptive, as the FTC contends, why did the FTC sit on its hands for so long before coming into court seeking the extraordinary relief it now seeks?

While the FTC relies on the 1940 decision of *United States v. Summerlin*, 310 U.S. 414 (1940) to support its proposition that laches-type defenses cannot be applied against the government, there is more recent Supreme Court authority that expressly refused to rule that

[1] The sufficiency of Defendants' waiver defense discussed in Section G, *infra*.

Opposition to FTC's Motion To Strike Affirmative Defenses
CASE NO: CV-08-0822-SI

the defense cannot be pled against the United States. *See Office of Personnel Management v. Richmond,* 496 U.S. 414, 423 (1990) ("We leave for another day whether an estoppel claim could ever succeed against the Government"). Moreover, in *SEC v. Randy,* 1995 WL 616788 (N.D. Ill. Oct. 17, 1995), the district court denied the SEC's motion to strike a laches defense because the applicability of laches is determined on a case-by-case basis and the defense is not inadequate as a matter of law: "The equitable defense of laches requires a lack of diligence on the part of the plaintiff and prejudice to the defendant from the delay" (citations omitted). *Id.* at *5.

Indeed, other California district courts have permitted the laches-type defense to go forward against the FTC and they should be permitted here. For example, in *FTC v. Hang-Ups Art Enters., Inc.,* 1995 WL 914179 at *4, the district court denied the FTC's Motion to Strike an identical laches defense, reasoning that the historical rule that laches is not available against the government may be subject to evolution, and the facts of each case should determine whether laches applies. *Id.* The *Hang-Ups* court explained that the Ninth Circuit's decision in *United States v. Ruby,* 588 F.2d 697, 705 n.10 (9th Cir. 1978) made clear that "laches may be a defense against the government if 'affirmative misconduct' by the government is shown." The *Hang-Ups* court ruled that "the facts of the case should decide whether there has been affirmative misconduct such that laches might apply" and refused to strike the affirmative defense. The *Hang-Ups* court ruling was followed by the district court in *FTC v. Braswell,* No. CV 03-3700 DT (PJWX)

(C.D. Cal. Nov. 10, 2003) at 13-14,[2] a case otherwise cited by the FTC, which allowed the laches defense to go forward to trial.[3]

While the *Hang-Ups* and *Braswell* decisions found that sufficient "affirmative misconduct" had been alleged, the Ninth Circuit and other courts have interpreted the term loosely and found that government inaction can qualify as affirmative misconduct without proof of "misfeasance." *See Yoo v. INS*, 534 F.2d 1325, 1329 (9th Cir. 1976) (inaction in the form of delay and failure to perform plain duty amounted to affirmative misconduct; "[j]ustice and fair play can only be achieved in this case by holding . . . that the Government is estopped from denying petitioner the benefit [he seeks]"); *Corniel-Rodriguez v. INS*, 532 F.2d 301, 306-307 (2d Cir. 1976) (failure to perform a legally required task found to amount to affirmative misconduct); *Beacom v. EEOC*, 500 F.Supp. 428, 438 (D. Ariz. 1980) ("whether nonfeasance by the Government is simply inaffirmative, or amounts to 'affirmative inaction' should be viewed with reference to the circumstances of each case").

Given the existence of a potential decade delay, Defendants are entitled to explore the basis of government inaction. Indeed, because there was a significant financial investment by the defendant companies in the research, development and marketing of

---

[2] The *Braswell* decision which is cited in the FTC's motion to strike is attached to the Lustigman Declaration at Exhibit 3.
[3] Other recent decisions continue to recognize that the government may be equitably estopped from proceeding where the government has committed misconduct. *See Rumsfeld v. United Technologies Corp.,* 315 F.3d 1361, 1377 (Fed. Cir. 2003); *Zacharin v. United States*, 213 F.3d 1366, 1371 (Fed. Cir. 2000); *Linkous v. United States,* 142 F.3d 271 (5th Cir. 1998).

Opposition to FTC's Motion To Strike Affirmative Defenses
CASE NO: CV-08-0822-SI

the products, which are it issue in this litigation, the government's delayed decision to

bring an enforcement action prejudiced them. Defendants could have and would have

altered the marketing and advertisements for the products at issue had the FTC filed an

action earlier or advised that it considered the advertising to be false or unsubstantiated.

These facts more than demonstrate the kind of prejudice which supports a laches defense.

*See, e.g., Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187 (2d Cir. 1996) (unreasonable

delay of five years in the filing false advertising suit would have prejudiced the

defendant); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 27 F.Supp.2d 1043 (N.D. Ill.,1998), *aff'd*,

191 F.3d 813 (7th Cir. 1999); s*ee also Joint Stock Society v. UDV North America, Inc.*,

53 F.Supp.2d 692 (D.Del. 1999), *aff'd*, 266 F.3d 164 (3rd Cir. 2001).

Moreover, even the authority relied upon by the FTC in this argument permitted

Defendants to assert the estoppel affirmative defense. *See FTC v. Magazine Solutions,*

*LLC*, 2007 WL 2815695 at *1 (W.D. Pa. 2007) (denying motion to strike estoppel

affirmative defense).[4] *See also Resolution Trust Corp. v. Gegor,* No. 94 CV 2578, 1995

WL 931093 at *3 (E.D.N.Y. Sept. 29, 1995) (denying government's motion to strike

laches, waiver, and estoppel defenses); *FDIC v. Harrison*, 735 F.2d 408, 412 (11th Cir.

1984) (applying equitable estoppel to FDIC).

Defendants are thus entitled to pursue their defenses of laches and estoppel at this

stage. Without such defenses, the FTC would be able to prosecute Defendants for

conduct taking place a decade ago, which it appears it may be attempting here.

---

[4] The unpublished *FTC v. Debt Solutions, Inc.* decision heavily relied upon by the FTC involved an *uncontested* motion to strike and should accordingly be discounted. 2006 WL 2257022 (W.D. Wash. 2006).

Defendants should be able to take discovery to more fully determine the extent laches and estoppel applies to the facts of this case. If the FTC delayed action, Defendants may have been significantly prejudiced. Given that Defendants' laches and estoppel defenses are sufficiently alleged, backed by a long period of inaction of on the part of the FTC, and have been permitted in other actions against the United States (including the FTC), the defenses should not be stricken here at this early stage of litigation.

## B. THE FTC FAILED TO EXHAUST ADMINISTRATIVE REMEDIES (Third Affirmative Defense)

The FTC's failure to exhaust its administrative remedies should not be stricken as an affirmative defense because the Court should consider the FTC's actions when determining the propriety of granting an injunction. The Supreme Court has held that one of the requirements for injunctive relief has always been the inadequacy of legal remedies. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-312 (1982).

> The grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law.

*Id.* at 313. Whether the FTC could have attained its stated goal of injunctive relief by pursuing less drastic means, such as by initiating administrative proceedings at any time during the period of alleged misconduct, is an issue that should be determined later in this case, and not be automatically ruled out by striking this affirmative defense. "An injunction is not the only means of ensuring compliance." *Id.* at 314.

Whether administrative remedies could have been pursued is material to the Court's determination on whether to grant an injunction.

Opposition to FTC's Motion To Strike Affirmative Defenses
CASE NO: CV-08-0822-SI

## C. THE FTC'S MAXIMUM RECOVERY IS CAPPED AT DEFENDANTS PROFITS, AND IN THE EVENT OF JUDGMENT IN THE FTC'S FAVOR, IT CAN RECOVER DEFENDANTS' PROFITS ONLY; DEFENDANTS ARE ENTITLED TO AN OFFSET OF ALL EXPENSES (Fourth and Twelfth Affirmative Defenses)

The FTC's statement on page 4 of its memorandum that "it is well settled that the amount of monetary relief in consumer protection cases brought under Section 13(b) of the FTC Act is equal to total consumer sales, less any refunds" is simply an incorrect statement of law. The law, as demonstrated by two recent circuit court decisions, has moved far away from the FTC's trumpeted position, and consequently, Defendants' fourth and twelfth affirmative defenses raise legal and factual issues that preclude them from being struck.

The FTC seeks the remedy of disgorgement in this action. However, the FTC's statutory grant of authority limits it equitable remedies, as opposed punitive remedies. Therefore, it is limited to disgorgement of profits, not disgorgement of revenues. *See FTC v. QT, Inc.,* 448 F.Supp.2d 908 (N.D. Ill. 2006), *aff'd,* 512 F.3d 858 (7th Cir. 2007).

Although the FTC argues against postage and taxes specifically, many offsets from a defendant's revenues are allowed in FTC cases, not just postage and taxes. *See FTC v. Verity Int'l, Ltd.,* 443 F.3d 48, 67 (2d Cir. 2006) (awarding "the full amount lost by consumers" can amount to reversible error); *FTC v. QT, Inc.,* 512 F.3d 858, 863 (7th Cir. 2008) (disgorgement of profits is the appropriate remedy).

In *Verity,* the district court was reversed for entering judgment in "the full amount lost by consumers." 443 F.3d at 67. The district court's award of $17.9 million in restitution was vacated by the Second Circuit because "[t]he appropriate measure for

Page 9

1  restitution is the benefit <u>unjustly received</u> by the defendants." *Id.* (emphasis supplied). In

2  remanding the case to the district court, the Second Circuit repeatedly emphasized that it

3
   was the defendants' unjust gain, not total gain that was relevant to the calculation of
4

5  equitable restitution. *Id.* at 68 (focus of the restitution calculation should be on the

6  defendants-appellant's unjust gains).

7       Similarly, *FTC v. QT, Inc.,* 448 F.Supp.2d 908 (N.D. Ill. 2006), *aff'd,* 512 F.3d

8
   858 (7th Cir. 2008) supports the viability of the affirmative defense of offset. Rejecting
9

10 the FTC's demand for the defendant's gross revenues, the *QT* court ordered the

11 disgorgement of defendants' profits and also ordered that every purchaser should be

12 offered a refund. 448 F.Supp.2d at 975.

13
        In *FTC v. Figgie International, Inc.,* 994 F.2d 595 (9th Cir. 1993), an FTC case
14

15 brought under section 19(b) of the FTC Act and relied by the FTC in its brief on this issue,

16 the Ninth Circuit wrote that "if disgorgement of Figgie's receipts would exceed redress to

17 consumers, then in the circumstances of this case requiring Figgie to pay the Commission the

18 excess would be for the purpose of punishing Figgie, not making redress to the consumers

19
   who bought [the product]. Not all the receipts for [the product] need to be the result of
20

21 deceptive practices, because the Commission found that the [product] had value, might

22 reasonably have been purchased by some consumers, and that some of the claims made for

23 them in the promotional materials were true." *Id.* at 607.

24
        Moreover, while the FTC places great weight on the *Bronson* decision, this exact
25

26 issue was decided against the FTC in that case there when its motion to strike the

27 affirmative defense of offset was denied. *See FTC v. Bronson Partners, LLC,* No.

28 3:04CV1866(SRU), 2006 WL 197357 at *2 (D. Conn. Jan. 25, 2006) (declining to strike

Opposition to FTC's Motion To Strike Affirmative Defenses
CASE NO: CV-08-0822-SI

affirmative defenses because "any monetary award may reflect benefits received by consumers....") .

These decisions are by no means unique.   In *Braswell* (issued even prior to the *Verity* and *QT* decisions which recognized offsets), the court denied the FTC's motion to strike the affirmative defense stating:

> this Court finds that a determination as to the applicability of this affirmative defense is premature.  In other words, the law that an offset/setoff is not allowed is not "beyond dispute."  In fact, while the FTC argues that *no* deductions are proper, the FTC's own case law demonstrates that the types of "offset/setoff" sought by Defendants are frequently deducted from overall judgments.

*FTC v. Braswell* (Lustigman Decl., Ex. 3) at 17-18.

Moreover, under other recent decisions, FTC restitution claims were limited to a defendant's profits and also offset by the value conferred upon consumers.[5]   Indeed, in the specific context of FTC cases, courts have found that a defendant's revenues are <u>not</u> the proper basis for damages awarded under the FTC Act. Many courts either refused to award damages or offset the damages claimed by the FTC when consumers are conferred some type of benefit from their dealings with a defendant.  In *FTC v. Magui Publishers, Inc.*, Civ. No. 89-3818 RSWL(GX), 1991 WL 90895 at *12 (C.D. Cal. Mar. 28, 1991), *aff'd,* 9 F.3d 1551 (9th Cir. 1993), the court deducted from the damages award the defendants' costs of producing falsely advertised Dali etchings and lithographs.

---

[5] Courts routinely deduct amounts that plainly reduce the wrongdoer's actual profit from governmental recoveries. such as expenses and transaction costs. *SEC v. Lorin,* 76 F.3d 458. 462 (2d Cir. 1996) ("the decision to order disgorgement of ill-gotten gains. and the calculation of those gains. lie within the discretion of the trial court, which must be given wide latitude in these matters"); *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978) (disgorgement is remedial, not punitive).

1
2
3
4

> Thus, the defendants' gross revenue, and the amount of consumer injury, from their illegal activity earned was at least $3.96 million [...] The sum of the costs for lithographs and etchings would then equal roughly $2.0 million. When this cost figure is subtracted from the defendants' revenue, previously calculated to be $3.96 million, the amount of unjust enrichment to the defendants is determined to be $1.96 million.

5
6
7

*Id.* In *FTC v. Kuykendall*, 371 F.3d 745, 766-67 (10th Cir. 2004), the defendants' gross receipts were used merely as a baseline to establish restitution amount.

8
9
10
11
12

Accordingly, should the FTC prevail, the amount of the offset that should be deducted from total revenues is an important issue in this case and is far from "spurious" as the FTC claims. The fourth and twelfth affirmative defenses therefore should not be stricken.

13
14

## D.   TRUTHFUL COMMERCIAL SPEECH WARRANTS FIRST AMENDMENT PROTECTION (Fifth Affirmative Defense).

15
16
17
18
19

The FTC's attempt to strike Defendants' fifth affirmative defense[6] should be denied as it is bsed on decisional authority that pre-dates the landmark ruling in *Pearson v. Shalala*, 164 F.3d 650, 655 (D.C. Cir. 1999) and otherwise ignores other important decisions supporting the defense.

20
21
22
23
24
25
26
27

---

[6] Defendants' fifth affirmative defense provides: "This Complaint is barred because the Defendants' actions are privileged and protected by the First Amendment to the United States Constitution.  The FTC, by its Complaint, seeks to restrict, restrain and/or prohibit protected commercial speech, through the use of ad hoc and non-defined terms and advertising substantiation lacking any measurable degree of definiteness.  To the extent the FTC's actions are premised upon alleged representations made "by implication", the FTC has labeled them false or misleading without relying on extrinsic evidence.  In proceeding this way, the FTC has failed to choose and/or rejected all alternate means of achieving its interests that are less restrictive of protected speech."

28

Opposition to FTC's Motion To Strike Affirmative Defenses
CASE NO: CV-08-0822-SI

It cannot be disputed that truthful commercial speech is protected by the First Amendment. *Central Hudson Gas & Electric Corp., v. Public Service Commission of New York,* 447 U.S. 557 (1980). In this action, the FTC goes beyond merely challenging untrue commercial speech – but instead focuses on the level of substantiation it contends must be possessed for dietary supplement advertising to be considered truthful commercial speech. Courts have recognized that FTC standards regarding advertising can be challenged on First Amendment grounds. *See, e.g., Beneficial Corp. v. FTC*, 542 F.2d 611, 618-20 (3rd Cir. 1976) (allowing First Amendment challenge to FTC's total ban on the use of certain phrase in advertising tax preparation). Indeed, in *Pearson, supra,* the District of Columbia Circuit rejected as "almost frivolous" an almost identical argument by the government ruling "that health claims lacking 'significant scientific agreement' are inherently misleading and thus entirely outside the protection of the First Amendment." 164 F.3d at 655.

Similarly, the district court in *FTC v. Bronson* recognized the availability of the First Amendment to the advertising of dietary supplement products. *See FTC v. Bronson,* 2006 WL 197357 at *2 (permitting First Amendment defense to go forward as "there may be a set of facts that support the defendants' claim that their actions are protected by the First Amendment"). In fact, even the FTC's own administrative tribunal has recognized that defendants should be entitled to develop a record on First Amendment issues. *See In the Matter of Basic Research, L.L.C.,* FTC Docket No. 9318, 2004 WL 2682854 (F.T.C.) (Nov. 4, 2004) at p.3 (First Amendment defense relating to substantiation must be deferred until factual record has been developed).

1    Defendants' First Amendment related defenses are entitled to go forward so that

2    they may demonstrate the merits of the scientific basis behind its advertising claims.

3    Commercial speech explaining the scientific evidence is protected by the First

4    Amendment as long as it is truthful and not misleading.

5

6    **E.    THE FTC HAS FAILED TO PROVIDE FAIR NOTICE OF WHAT
7         CONSTITUTES A "REASONABLE BASIS" (Sixth Affirmative Defense)**

8    Remarkably, the FTC argues that Defendants' Constitutional due process rights[7]

9    relating to the FTC's standards of "reasonable" substantiation is "spurious" and "defies

10   credulity."   Perhaps caught up in its attempt at limiting Defendants' constitutional rights

11   to study the basis of the defense, the FTC fails to advise the Court that such a defense

12   serves the basis for the leading jurisprudence on dietary supplement claims and has

13

14   otherwise been recognized by its own tribunal.

15   In *Pearson v. Shalala, supra*, the appropriateness of the "due process" clause of

16   the Fifth Amendment was recognized in considering the vague standards utilized by the

17

18   FDA in restricting claims relating to dietary supplement products. *See Pearson, supra,*

19

20   [7] Defendants' sixth affirmative defense provides: "This action is based upon regulatory
     standards governing the quantity and quality of substantiation Defendants must possess at
21   the time they make express and implied claims in advertisements. The standards fail and
     have failed to provide reasonable persons, including Defendants, with fair notice as to
22   whether contemplated claims in advertisements, including those at issue in this
     proceeding, are and were permissible and/or allow and have allowed the FTC and/or its
23   representatives to enforce the standards pursuant to their personal or subjective
     predilections. The regulatory standards are thus unconstitutionally vague on their face
24   and/or as applied to Defendants' prior and contemplated advertising activity and,
     therefore, violate Defendants' rights to due process under the Fifth Amendment to the
25   Constitution of the United States and the Complaint is thus not in the public interest. The
     Complaint based upon such standards is therefore barred.
26

27

28

Opposition to FTC's Motion To Strike Affirmative Defenses
CASE NO: CV-08-0822-SI

164 F.3d at 660 (FDA's requiring "significant scientific agreement" fails to provide

dietary supplement companies with sufficient guidance was "squarely" presented on Fifth

Amendment vagueness challenge). The D.C. Circuit thereafter declared the FDA

regulations invalid because they failed to put dietary supplement companies on notice as

to the principles guiding agency action and to set forth the FDA's meaning of "significant

scientific agreement" or "at minimum, what it does not mean." *Id.* at 661.

Similarly, the FTC's own administrative tribunal denied its counsel's motion to

strike a due process affirmative defense. *See Basic Research,* 2004 WL 2682854 (F.T.C.)

at pp.2-3 (denying motion to strike due process defense so that factual record can be

developed).

At bar, Defendants intend to challenge the FTC's vague standards that it utilizes to

support its "reasonable basis" standard for dietary supplement health claims. The current

standard fails to give dietary supplement marketers sufficiently defined standards as to

what "reasonable basis" means or doesn't mean. While the FTC will likely assert in this

litigation that its "reasonable basis standard" means only double-blind, placebo controlled

clinical human testing for making a claim, such a standard is not published through

formal procedures and has otherwise been rejected by the Ninth Circuit. *See, e.g., FTC v.*

*Enforma Natural Products, Inc.*, 362 F.3d 1204, 1217 (9th Cir. 2004) (rejecting FTC's

position that only double-blind, placebo controlled clinical testing could serve to

substantiate dietary supplement weight loss' claims). The rejection of the FTC's standard

was again affirmed over the FTC's objections earlier this year:

> Nothing in the Federal Trade Commission Act, the foundation of this
> litigation, requires placebo-controlled, double-blind studies. The Act

1   forbids false and misleading statements, and a statement that is plausible
2   but has not been tested in the most reliable way cannot be condemned out
3   of hand. The burden is on the Commission to prove that the statements are
    false.

4   *FTC v. QT, Inc.,* 512 F.3d 858, 861 (7th Cir. 2008).

5
6   Given that there FTC lacks a defined standard of reasonable basis, it has failed to
7   put Defendants on notice as to what it considers a reasonable basis for a dietary
8   supplement advertising claim.  Defendants are entitled to explore the lack of such
9   standards in discovery and to present at trial evidence demonstrating that the failure to
10  provide such standards warrants a finding of void for vagueness.
11
12  ### F.  DEFENDANTS MAY CHALLENGE THE FTC'S ARBITRARY AND CAPRICIOUS STANDARD (Sixth & Thirteenth Affirmative Defenses)
13
14  The FTC does not have unlimited discretion to seek enforcement against one
15  company that it has not sought against other competitors who may have committed
16  similar violations of the law.   *See FTC v. Universal-Rundle Corp.,* 387 U.S. 244, 251
17  (1967) (FTC "does not have unbridled power to institute proceedings which will
18
19  arbitrarily destroy one of many law violators in an industry"). Other courts have
20  followed this admonition and have not permitted arbitrary enforcement. *See, e.g.,*
21  *Johnson Product Co. v. FTC,* 549 F.2d 35 (7th Cir. 1977) (remanding to FTC for
22  consideration of differences in consent orders negotiated with competitors); *Ford Motor*
23
24  *Co. v. FTC,* 547 F.2d 954 (6th Cir. 1976) (comparing requirements in consent decree
25  entered into by General Motors to consent decree entered into by Ford to ascertain
26  whether Ford would be placed in competitive disadvantage), *cert. denied,* 431 U.S. 915
27  (1977); *Diener's Inc. v. FTC,* 494 F.2d 1132, 1133 (D.C. Cir. 1974) (modifying consent
28

1    decree so that restrictions would be same as those entered into by competitor).

2         At bar, the FTC's failure to establish defined and understandable standards for

3    advertisers is a critical flaw and Defendants should be entitled to demonstrate that the

4

5    FTC seeks relief in this action that it has not sought against other dietary supplement and

6    health product marketers accused of false claims or lack of substantiation.  By striking

7    these affirmative defenses, the Court would effectively be imposing a rule mandating that

8    Defendants prove this element of this case before discovery has been completed.  Given

9

10   that the evidence of inconsistent enforcement lies in the hands and files of the FTC, such

11   a burden would be impossible.  Defendants are entitled to explore why the FTC is taking

12   a position against Defendants that is inconsistent with the relief sought in prior cases.

13

14   **G.   BECAUSE THE PRODUCTS WERE SOLD WITH A MONEY BACK
         GUARANTEE OF SATISFACTION, CONSUMER WAIVER IS A
15       PROPER AFFIRMATIVE DEFENSE TO A CLAIM OF CONSUMER
         REDRESS (Ninth Affirmative Defense)**

16

17        The FTC seeks to preclude Defendants from asserting a waiver defense. However,

18   the waiver defense should not be stricken for two independent reasons: (a) each allegedly

19   injured consumer may have waived their rights to seek restitution because he or she

20   entered into a valid and binding contract to purchase the product at issue, and the contract

21

22   defined the terms under which redress could be obtained. The products at issue were sold

23   with a money-back guarantee of satisfaction, and there is no allegation that the guarantee

24   was dishonored or that any dissatisfied consumer was denied a refund if requested. Just

25   as the FTC is not precluded from exploring whether the money-back guarantee was

26   dishonored, Defendants should not be prevented from asserting that guarantee was in fact

27

28   honored, and therefore consumers have waived certain other rights to obtain relief; and

Page 17

1    (b) by years of inaction before filing suit and challenging conduct that is up to a decade

2    old, the FTC may have had every opportunity to request that Defendants change their

3
     practices but the FTC chose to remain silent. Defendants are entitled to explore what the
4
5    FTC knew and when it knew it, and whether principles of equity preclude the FTC from

6    asserting claims it may have knowingly decided not to press in the past.

7         The FTC's bid to strike this defense is contrary to the decisions of other courts.

8
     On the issue of consumer waiver, the FTC stands in the shoes of each consumer and it is
9
10   a question of fact whether consumers waived their claims. The FTC should not intrude

11   into contracts entered into by individual parties absent fraud.

12        For example, the Eleventh Circuit refused to strike a similar defense and allowed

13
     such a defense to be asserted against a branch of the federal government in *FDIC v.*
14
15   *Harrison*, 735 F.2d 408 (11th Cir.1984). "We see no reason not to apply the traditional

16   rules of equitable estoppel to the conduct of FDIC". *Id.* at 412.  In *U.S. v. Walerko Tool*

17   *and Engineering Corp.,* 784 F.Supp. 1385, 1389 (N.D. Ind. 1992), the district court
18
19   refused to strike a waiver defense against the government because a question of fact

20   existed as to whether the government waived its claims. In *Resolution Trust Corporation*

21   *v. Gregor*, 1995 WL 931093 at *3, the court found the viability of laches, estoppel and

22   waiver defenses to be an open and disputed question and declined to decide the issue on a
23
24   motion to strike. Accordingly, the plaintiff's motion to strike was denied, and the same

25   result should issue in the motion at bar.

26

27

28

**H. THE CHALLENGED CLAIMS HAVE CEASED, SO THE FTC'S REQUESTS FOR INJUCTIVE RELIEF ARE MOOT  (Eleventh Affirmative Defense)**

Contrary to the FTC's assertions, the affirmative defense of mootness is valid.   As a general matter, "[p]ast wrongs are not enough for the grant of an injunction." *FTC v. Sage Seminars, Inc.,* No. C 95-2854 SBA, 1995 WL 798938 at *6 (N.D. Cal. Nov. 2, 1995); *Enrico's Inc. v. Rice,* 730 F.2d 1250, 1253 (9th Cir. 1984).

Claims for injunctive relief may be moot if the defendant can show that there is no reasonable expectation that the wrongful conduct will be repeated. *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953); *SCM Corp. v. FTC,* 565 F.2d 807, 812 (2d Cir. 1977).  Although cessation of the conduct at issue does not foreclose injunctive relief or automatically render a case moot, this principle does not preclude the Defendants from even raising a defense of mootness.

Court's have recognized the availability of the defense in FTC actions particularly as it relates to the appropriateness of the remedy.   Indeed, in the decision frequently cited by the FTC at bar, *FTC v. Bronson, supra,* the district court refused to strike the mootness affirmative defense. *Bronson, supra,* 2006 WL 197357 at * 3 ("Although cessation of conduct is not a defense to a violation of the FTC Act, like the good faith defense, it may be relevant with respect to an appropriate remedy."); *see also  FTC v. Affordable Media, LLC,* 179 F.3d 1228, 1238 (9th Cir. 1999) (*citing United States v. Concentrated Phosphate Export Ass'n, Inc.,* 393 U.S. 199, 203 (1968)).  While the Supreme Court also said that "the test for mootness […] is a stringent one" (*Id.*), this does not preclude Defendants from asserting the defense and attempting to meet their burden of proof.

1    Here, the business practices challenged by the FTC have ceased and are not likely

2    to continue. The case law clearly allows a defense of mootness where a defendant meets

3
     the required burden. *See W.T. Grant Co., supra,* 345 U.S. at 633.  Certainly, Defendants'
4
5    cessation of conduct prior to the initiation of this action is relevant to the appropriateness

6    of any relief and Defendants should not be barred from raising this defense.

7
       I.   **INJNUNCTIVE RELIEF SHOULD NOT ISSUE DUE TO THE**
8            **PRESENCE OF AN ADEQUATE REMEDY AT LAW (Tenth**
             **Affirmative Defense)**
9
10   The FTC seeks to strike Defendants' tenth affirmative defense that: "Plaintiff is

11   not entitled to consumer relief because there exists an adequate remedy at law" despite

12   the fact that it is seeking monetary recovery in the guise of ancillary equitable relief.

13
     The Court should consider this affirmative defense when it determines whether to
14
15   grant any ancillary equitable monetary relief.  *See FTC. v. Evans Products Co.,* 775 F.2d

16   1084, 1087 (9th Cir. 1985) ("in the absence of ancillary relief, Evan's customers may still

17   obtain relief through state actions tailored to the specific misrepresentations alleged in

18
     their individual cases").  Since the FTC seeks ancillary relief, the Defendants' affirmative
19
20   defense that such relief provides an adequate remedy at law should not be stricken.

21   **III.   DEFENDANTS ARE ENTITLED TO A JURY TRIAL TO THE EXTENT**
             **THE FTC SEEKS A PUNITIVE REMEDY OR ANCILLARY MONETARY**
22           **RELIEF**

23
     Defendants seek a right to trial by jury on each of the claims to the extent the FTC
24
25   is seeking legal, not equitable relief.  Despite pleading a request for ancillary monetary

26   relief, demanding joint and several liability, and providing a damage calculation in

27   discovery that is penal in its relief, the FTC claims that Defendants should be stripped of

28

Page 20

Opposition to FTC's Motion To Strike Affirmative Defenses
CASE NO: CV-08-0822-SI

1   their Seventh Amendment right to a jury trial. An examination of the Complaint reveals

2   that the FTC is seeking remedies well beyond purely equitable relief. In Paragraph 20 of

3   the FTC's Complaint, the FTC asserts that, in addition to equitable relief, it is seeking

4

5   additional "ancillary relief" which essentially amount to monetary damages.

6        The FTC's request for ancillary monetary relief clearly goes beyond pure equity. By

7   claiming an entitlement to a damage award in the amount of gross sales (less merely refunds

8   and chargebacks), the FTC is seeking a penal remedy.  From the perspective of the individual

9
    defendant Holmes, the FTC is seeking a damage award well in excess of monies he received.
10

11  Thus, such a demand is plainly penal in nature as recognized by the Ninth Circuit authority

12  relied upon by the FTC. *See FTC v. Figgie International, Inc.,* 994 F.2d 595 (9th Cir. 1993).

13  Moreover, even though Defendants would have paid significant portions of revenue to the

14  United States Treasury in the form of taxes and any damage relief here, if obtained, will

15
    more than likely go to the United States Treasury as opposed to consumers.[8]  Given that the
16

17  FTC's demand seeks effectively a double payment to the United States Treasury, the FTC is

18  in effect seeking to assess a penalty.  Separate from the merits of such a claim, the FTC's

19  formal intention to seek such relief triggers Defendants' constitutional right to a trial by

20  jury.[9]

21
         It is well-settled that a jury is guaranteed under the Seventh Amendment to the
22

23  Constitution when the relief sought is legal in nature.

24  ——————————————————

25  [8]   Upon information and belief, discovery will likely reveal that a significant portion of
    damages obtained by the FTC in the name of "consumer redress" actually ends up in the
26  general fund of the United States Treasury, and not in the hands of consumers.

27  [9]   The FTC fails to make any showing of how it would be prejudiced by having its claims
    tried by a jury.
28

Opposition to FTC's Motion To Strike Affirmative Defenses
CASE NO: CV-08-0822-SI

> [I]f a "legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact. The right cannot be abridged by characterizing the legal claim as 'incidental' to the equitable relief sought." *Curtis v. Loether,* 415 U.S., at 196, n. 11, 94 S.Ct., at 1009, n. 11. Thus, petitioner has a constitutional right to a jury trial to determine his liability on the legal claims.

*Tull v. United States*, 481 U.S. 412, 425 (1987).

Here, the monetary relief requested as to Defendants is akin to a legal damages claim, given that the FTC is seeking Defendants' total revenues, not just their alleged unjust gains.

In FTC cases, issues of liability and monetary damages have been bifurcated for separate determinations. *See FTC v. Minuteman Press, LLC,* 53 F.Supp.2d 248, 251 (E.D.N.Y. 1998). The Court can elect to use that option in this case. Thus, Defendants are entitled to have a jury decide if there is any liability for the monetary relief being sought by the FTC.

## IV.    THE FTC'S OPPOSITION TO A NON-EXISTENT MOTION TO DISMISS SHOULD BE DENIED

Although Defendants have not moved to dismiss, the FTC has filed an opposition to what it inexplicably views as a motion to dismiss – Defendants' prayer for relief.  In Defendants' prayer for relief, Defendants seek, *inter alia*, dismissal of the complaint with prejudice.   While this is a proper request for ultimate relief, the FTC provides no authority that a prayer for relief should be consider a motion under Local Rule 7.2 and F.R.C.P.  Rule 12(b).   Having created a strawman motion to dismiss, the FTC's attempt defeat a motion that Defendants have not made should be denied.

1

2                                    **CONCLUSION**

3

        The FTC's Motion to Strike and Opposition to a Non-Existent Motion to Dismiss

4

5    should be denied on all grounds set forth above.

6

7    Dated:  June 19,  2008

8

9                                    THE LUSTIGMAN FIRM, P.C.

10

11                       BY: _____

                                   ANDREW B. LUSTIGMAN (pro hac)

12                                  SHELDON S. LUSTIGMAN (pro hac)

13

14                                   THE LUSTIGMAN FIRM, P.C.
                                     149 Madison Avenue, Suite 805
15                                   New York, New York 10016
                                     Telephone:  212.683.9180
16                                   Facsimile:  212.683.9181

17

18                                   RENEE D. WASSERMAN
                                     ROGERS JOSEPH O'DONNELL
19                                   311 California Street, 10th Floor
                                     San Francisco, California 94104
20                                   Telephone:  415.956.2828
                                     Facsimile:  415.956.6457

21                                   Attorneys for Defendants
                                     MEDLAB, INC., PINNACLE HOLDINGS,
22                                   INC., METABOLIC RESEARCH
                                     ASSOCIATES, INC., U.S.A. HEALTH, INC.
23                                   AND L. SCOTT HOLMES

24

25

26

27

28

Opposition to FTC's Motion To Strike Affirmative Defenses
CASE NO: CV-08-0822-SI

## CERTIFICATE OF SERVICE

I, Marie Carney, a paralegal at The Lustigman Firm, P.C., counsel for the defendant in the within action, do hereby certify that true and correct copies of the following documents:

**DEFENDANT'S OPPOSITION TO FTC'S MOTION TO STRIKE AFFIRMATIVE DEFENSES, JURY DEMAND AND NON-EXISTENT MOTION TO DISMISS**

**AFFIDAVIT OF ANDREW B. LUSTIGMAN**

were served by the Electronic Court Filing system (ECF) on the 19th day of June 2008 upon counsel for plaintiff in the within action:

Kerry O'Brien (Cal. Bar No. 149264)
Sarah Schroeder (Cal. Bar No. 221528)
Federal Trade Commission
901 Market Street, Suite 570
San Francisco, CA 94103
Telephone: (415)848-5189
Fax: (415)848-5184
E-mail address: kobrien@ftc.gov

Dated June 19, 2008

Marie Carney