1  ROGERS JOSEPH O'DONNELL
   RENEE D. WASSERMAN (State Bar No. 108118)
2  ALEXIS JANSSEN MORRIS (State Bar No. 200264)
   311 California Street, 10th Floor
3  San Francisco, California 94104
   Telephone: 415.956.2828
4  Facsimile: 415.956.6457
   E-mail address: rwasserman@rjo.com
5
   THE LUSTIGMAN FIRM, P.C.
6  SHELDON S. LUSTIGMAN (admitted *pro hac vice*)
   ANDREW B. LUSTIGMAN (admitted *pro hac vice*)
7  149 Madison Avenue, Suite 805
   New York, New York 10016
8  Telephone: 212.683.9180
   Facsimile: 212.683.9181
9  E-mail address: andy@lustigmanfirm.com

10 Attorneys for Defendants
   MEDLAB, INC., PINNACLE
11 HOLDINGS, INC., METABOLIC
   RESEARCH ASSOCIATES, INC.,
12 U.S.A. HEALTH, INC. and
   L. SCOTT HOLMES

13

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16

17 FEDERAL TRADE COMMISSION,          Case No. CV-08-0822-SI

        Plaintiff,
18
                                      AFFIDAVIT OF ANDREW B.
        vs.                           LUSTIGMAN
19

20 MEDLAB, INC., et al.,

        Defendants.                   DATE: July 18, 2008
21                                    TIME:9 am
                                      CTRM:10, 19th Floor
22

23

24 I, Andrew B. Lustigman, declare and state:

25      I am an attorney with The Lustigman Firm, P.C., attorneys for defendants, Inc. in

26 the within action. I submit this declaration in support of Defendants' Opposition to the

27
   FTC's Motion to Strike.
28

CASE NO: CV-08-0822-SI

267357.1

1. Attached hereto as Exhibit 1 is a true and correct copy of a cover sheet and portion, including requests Numbers 1 and 3, of Plaintiff's First Request for Admissions from Defendants.

2. Attached hereto as Exhibit 2 is a true and correct copy of a cover sheet and portion, including requests Numbers 24, 25 and 26, of Plaintiff's First Request for Production of Documents.

3. Attached hereto as Exhibit 3 is a true and correct copy of the November 10, 3003 Order Denying in Part and Granting in Part Plaintiff Federal Trade Commission's Motion to Strike Various Affirmative Defenses of Defendants A. Glen Braswell, et al. in the case *Federal Trade Commission v. A. Glen Braswell et al.*, No. 03-3700DT (C.D. Cal.).

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of June, 2008 at New York, NY.

Andrew B. Lustigman

CASE NO: CV-08-0822-SI

267357.1

WILLIAM BLUMENTHAL
General Counsel

Kerry O'Brien (Cal. Bar No. 149264)
Sarah Schroeder (Cal. Bar No. 221528)
Evan Rose (Cal. Bar No. 253478)
Federal Trade Commission
901 Market Street, Suite 570
San Francisco, CA 94103
Telephone: (415) 848-5100
Fax: (415) 848-5184
E-mail addresses: kobrien@ftc.gov
                  sschroeder@ftc.gov
                  erose@ftc.gov

Attorneys for Plaintiff
Federal Trade Commission

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### San Francisco Division

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>        v.<br><br>MEDLAB, INC.,<br><br>PINNACLE HOLDINGS, INC.,<br><br>METABOLIC RESEARCH ASSOCIATES, INC.,<br><br>U.S.A. HEALTH, INC., and<br><br>L. SCOTT HOLMES,<br>individually and as an officer of Medlab, Inc.; Pinnacle Holdings, Inc.; Metabolic Research Associates, Inc.; and U.S.A. Health, Inc.,<br><br>    Defendants. | No. C-08-00822 SI<br><br><br><br>**PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS FROM DEFENDANTS** |

**Plaintiff's 1st Request for Admissions**                    **Page 1 of 29**

3

the Respondent shall specify those portions of the Request which are admitted and qualify or

deny the remainder.

10.      If the Respondent lacks the information or knowledge with which to admit or deny a

Request, the Respondent must conduct a reasonable inquiry to attempt to obtain the information

or knowledge needed to make an admission or denial.

11.      Unless otherwise specified, the relevant time period for each admission is January 1,

2005, to the present.

**REQUESTS FOR ADMISSIONS**

**Admit that:**

**Corporate Defendants**

1.       Since at least 1998 and continuing until approximately January 2007, Medlab

          manufactured, advertised, promoted, offered for sale, sold, and distributed Zyladex to

          consumers throughout the United States.

2.       Medlab has sold Zyladex to consumers who reside in the Northern District of California.

3.       Since at least 1999 and continuing until approximately January 2007, MRA has

          manufactured, advertised, promoted, offered for sale, sold, and distributed Questral to

          consumers throughout the United States.

4.       MRA has sold Questral to consumers who reside in the Northern District of California.

5.       Since at least 2000 and continuing until approximately January 2007, USA Health has

          manufactured, advertised, promoted, offered for sale, sold, and distributed Rapid Loss to

          consumers throughout the United States.

6.       On behalf of Medlab, MRA and USA Health, Pinnacle placed advertisements for

          Zyladex, Questral, and Rapid Loss in Sunday newspaper supplements.

WILLIAM BLUMENTHAL
General Counsel

Kerry O'Brien (Cal. Bar No. 149264)
Sarah Schroeder (Cal. Bar No. 221528)
Evan Rose (Cal. Bar No. 253478)
Federal Trade Commission
901 Market Street, Suite 570
San Francisco, CA 94103
Telephone: (415) 848-5100
Fax: (415) 848-5184
E-mail addresses: kobrien@ftc.gov
                  sschroeder@ftc.gov
                  erose@ftc.gov

Attorneys for Plaintiff
Federal Trade Commission

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### San Francisco Division

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>MEDLAB, INC.,<br><br>PINNACLE HOLDINGS, INC.,<br><br>METABOLIC RESEARCH ASSOCIATES, INC.,<br><br>U.S.A. HEALTH, INC., and<br><br>L. SCOTT HOLMES,<br>individually and as an officer of Medlab, Inc.; Pinnacle Holdings, Inc.; Metabolic Research Associates, Inc.; and U.S.A. Health, Inc.,<br><br>    Defendants. | No. C-08-00822 SI<br><br><br>**PLAINTIFF'S FIRST REQUEST FOR DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND TANGIBLE THINGS** |

      c.     The Weight-Loss Products cause users to lose as much as 50% of all excess weight in just 14 days, without dieting or exercising.

      d.     The Weight-Loss Products cause permanent or long-term weight loss.

      e.     Clinical studies prove that the Weight-Loss Products cause users to lose substantial amounts of weight rapidly, without dieting or exercising.

21.     All documents and electronically stored information that tend to call into question or disprove the claims listed in Specifications 19 and 20.

22.     All documents and electronically stored information relating to the efficacy of the Weight-Loss Products, as formulated during the Period of Inquiry.

23.     All documents and electronically stored information relating to any of the materials provided in response to Specification 19 or 20, including, but not limited to, any document or information that disputes, contradicts, or calls into question any of the information in any of the documents and information submitted in response to Specifications 19 or 20.

24.     Documents sufficient to identify each Person who, since 1996, has tested the chemical composition or efficacy of the Weight-Loss Products for any purpose, or with whom Defendants have corresponded regarding any proposed or prospective test of the chemical composition or efficacy of the Weight-Loss Products for any purpose.

25.     Documents sufficient to identify each in-house or outside psychological, scientific, nutritional, medical, or other consultant that any Defendant has employed regarding the Weight-Loss Products since 1996.

26.     All documents and electronically stored information relating to any research study, or any proposed research study, of the Weight-Loss Products since 1996.

27.     All documents and electronically stored information relating to the creation of the Weight-Loss Products.

**PLAINTIFF'S FIRST REQUEST FOR DOCUMENTS**      **Page 11 of 16**     6



ENTERED
CLERK, U.S. DISTRICT COURT

NOV 1 3 2003

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).



FILED
CLERK, U.S. DISTRICT COURT

NOV 1 0 2003

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> A. GLENN BRASWELL, JOL MANAGEMENT CO., G.B. DATA SYSTEMS, INC., GERO VITA INTERNATIONAL, INC., THERACEUTICALS, INC., AND RON TEPPER <br><br> Defendants. | CASE NO. CV 03-3700DT (PJWx) <br><br> **ORDER DENYING IN PART AND GRANTING IN PART** PLAINTIFF FEDERAL TRADE COMMISSION'S MOTION TO STRIKE VARIOUS AFFIRMATIVE DEFENSES OF DEFENDANTS A. GLENN BRASWELL, JOL MANAGEMENT CO., G.B. DATA SYSTEMS, INC., THERACEUTICALS, INC. |

## I.  Background

### A.  Factual Summary

This action is brought by Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), which is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The Commission brings this action against Defendants A. Glenn Braswell, ("Braswell"), JOL Management Co., ("JOL"), G.B. Data Systems, Inc., Gero Vita International, Inc., ("GVI"),

1   Theraceuticals, Inc., ("Theraceuticals"), and Ron Tepper ("Tepper") - all of which
2   are hereinafter collectively referred to as the "Braswell Common Enterprise."
3            The Commission brings this action under Section 13(b) of the Federal
4   Trade Commission Act ("FTC Act"), to secure a permanent injunction, restitution,
5   disgorgement, and other equitable relief against the Braswell Common Enterprise
6   for engaging in deceptive acts or practices and false advertising in connection with
7   the advertising, marketing, and sale of products purporting to treat, prevent, and or
8   cure such conditions as respiratory illnesses, diabetes, dementia, obesity, and
9   impotence, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a)
10  and 52. See Complaint for Permanent Injunction and Other Equitable Relief
11  (hereinafter "Complaint") at 1-2.
12           The Commission alleges the following facts in its Complaint:
13           For over twenty-five years, Braswell has marketed dietary
14  supplements and other health-related products through a frequently changing
15  group of interrelated companies. See Complaint at ¶ 5. Defendants Braswell,
16  JOL, G.B. Data Systems, GVI, Theraceuticals, and Tepper operate a common
17  business enterprise. Id. at ¶ 11. They share and have shared officers, employees,
18  and office locations; have commingled funds; and are commonly controlled and
19  have participated in a common scheme to engage in deceptive acts and practices,
20  making them jointly and severally liable for said acts and practices. Id.
21           The Braswell Common Enterprise is one of the largest direct
22  marketers of dietary supplements and other health-related products in the United
23  States, with total sales since 1998 exceeding $798 million. See Complaint at ¶ 13.
24  The Braswell Common Enterprise uses direct mail solicitations to generate
25  business. See Complaint at ¶ 14. It purchases or rents consumer names and
26
27
28

2

SCANNED

1  addresses from brokers, targeting persons aged 40 to 60, and mails advertising to

2  these consumers. Id.

3          New and repeat purchasers receive multi-page advertisements that

4  describe various medical conditions and detail various remedies - often

5  purportedly based on "scientific breakthroughs" or "long lost but newly

6  discovered" formulas. Id. Defendants claim that their products will cure, treat, or

7  alleviate these conditions in glossy, multi-page brochures that typically feature

8  "expert" medical or scientific endorsers, consumer testimonials, and frequent

9  references to "scientific" evidence that purport to substantiate the efficacy and

10  benefits of the products. Id.

11          Purchasers also receive a "subscription" to the *Journal of Longevity*,

12  which appears to be a legitimate medical journal with scientific articles written by

13  medical professionals but which is, in fact, promotional advertising prepared and

14  disseminated by Defendants. Id. Consumers can purchase the advertised products

15  via mail order, telephone, or electronically on Defendants' website, www.gvi.com.

16  Id.

17          Defendants' advertisements contain a return address in Toronto,

18  Canada, to which consumers send their orders via mail. See Complaint at ¶ 15. In

19  fact, Defendants have no employees in Canada and all such mail orders are sent

20  from the Canadian mail drop address to Defendants' offices in the United States

21  for fulfillment. Id.

22          Among the products that Defendants have advertised, labeled, offered

23  for sale, sold and distributed in recent years are: Lung Support Formula, Gero Vita

24  G.H.3, and Testerex, all marketed since at least 1998; ChitoPlex, marketed since at

25  least 1999; AntiBetic Pancreas Tonic, marketed since at least 2000; and

26  Theraceuticals GH3 Romanian Youth Formula, marketed since at least 2001. See

27

28                                    3

9

1  Complaint at ¶ 16. Like their other products, Defendants advertise and offer these
2  products for sale through direct mail advertising, including the *Journal of*
3  *Longevity*, and through their website, www.giv.com. Id.
4          In its Complaint, the Commission details the specific claims made for
5  each product, indicating the symptoms that each product cures or alleviates, and
6  includes testimonials from consumers indicating their endorsement for the
7  products. See generally, Complaint at 6-31.
8          Defendants have represented, either expressly or by implication, that
9  Lung Support cures or significantly alleviates certain lung diseases and respiratory
10 problems, reverses existing lung damage in persons with emphysema, prevents
11 breathing problems for otherwise healthy persons, and is clinically proven to
12 eliminate or cure allergies, asthma, colds, and other illnesses and conditions. See
13 Complaint at ¶ 29. The representations made with regards to Lung Support are
14 false or were not substantiated at the time the representations were made,
15 constituting a deceptive practice, and the making of false advertisements in
16 violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52. See
17 Complaint at ¶ 30.
18         Defendants have represented, either expressly or by implication, that
19 AntiBetic can cure Type I and Type II diabetes, is an effective or superior
20 alternative to insulin or other medications for the treatment of diabetes, and is
21 clinically proven to regenerate or repair the pancreatic beta cells that produce
22 insulin and to lower blood sugar levels in persons with diabetes. See Complaint at
23 ¶ 31. The representations made with regards to AntiBetic are false or were not
24 substantiated at the time the representations were made, constituting a deceptive
25 practice, and the making of false advertisements in violation of Sections 5(a) and
26 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52. See Complaint at ¶ 32.
27
28

4

10

1     Defendants have represented, either expressly or by implication, that

2   G.H.3 is clinically proven to reverse and prevent age-related memory loss,

3   dementia, and Alzheimer's disease, and can increase life spans by 29%. See

4   Complaint at ¶ 33.  The representations made with regards to G.H.3 are false or

5   were not substantiated at the time the representations were made, constituting a

6   deceptive practice, and the making of false advertisements in violation of Sections

7   5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.  See Complaint at ¶ 34.

8     Defendants have represented, either expressly or by implication, that

9   ChitoPlex enables consumers to lose substantial weight without the need for a

10  restricted calorie diet or exercise, reverse obesity, and is proven to cause weight

11  loss based on a 1994 double-blind, placebo-controlled chitosan study conducted in

12  Finland that resulted in chitosan subjects losing an average of 15 pounds in four

13  weeks while consuming their normal diet.  See Complaint at ¶ 35.  The

14  representations made with regards to ChitoPlex are false or were not substantiated

15  at the time the representations were made, constituting a deceptive practice, and

16  the making of false advertisements in violation of Sections 5(a) and 12 of the FTC

17  Act, 15 U.S.C. §§ 45(a) and 52.  See Complaint at ¶ 36.

18    The Defendants have represented, either expressly or by implication,

19  that Testerex is effective in treating impotence or erectile dysfunction-in-62-95%

20  of users, and is safe with no harmful side effects.  See Complaint at ¶ 37.  The

21  representations made with regards to Testerex are false or were not substantiated

22  at the time the representations were made, constituting a deceptive practice, and

23  the making of false advertisements in violation of Sections 5(a) and 12 of the FTC

24  Act, 15 U.S.C. §§ 45(a) and 52.  See Complaint at ¶ 34.

25    Through the use of the statements contained in advertisements,

26  Defendants have represented, directly or by implication that all Gero Vita products

27

28                                      5

SCANNED

1   have been scientifically tested and proven to be effective, when in truth and in

2   fact, they have not been. <u>See</u> Complaint at ¶¶ 39-40. Therefore, the making of

3   these representations constitutes a deceptive practice, and the making of false

4   advertisements in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§

5   45(a) and 52. <u>Id</u>. at ¶ 40.

6           Defendants have represented, expressly or by implications, that the

7   *New Life Nutrition* magazine is an independent publication and not paid

8   commercial advertising, when in truth and in fact, the *New Life Nutrition*

9   magazine is not an independent publication, and is paid commercial advertising

10  written and disseminated by Defendants for the purpose of selling their products.

11  <u>See</u> Complaint at ¶¶ 41-42. Therefore, the making of these representations

12  constitutes a deceptive practice, and the making of false advertisements in

13  violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52. <u>Id</u>. at

14  ¶ 42.

15          Defendants have represented, expressly or by implication, that the

16  Council on Natural Nutrition is an independent organization that has expertise in

17  the examination and evaluation of nutritional health products, and that the Council

18  conferred its exclusive Golden Nutrition Award on three of Defendants' products,

19  including G.H.3, and ChitoPlex, based upon its senior scientific editors'

20  independent, objective, and valid examination and evaluation of thousands of

21  nutritional health products, using procedures generally accepted by experts in the

22  relevant fields to yield accurate and reliable results. <u>See</u> Complaint at ¶ 43.

23          In truth and in fact, the Council on Natural Nutrition is not an

24  independent organization that has expertise in the examination or evaluation of

25  nutritional health products, and it did not confer its exclusive Golden Nutrition

26  Award on the Defendants' products, including G.H.3, and ChitoPlex, based upon

27

28                                          6

12

1  its senior scientific editors' independent, objective, and valid examination and

2  evaluation of thousands of nutritional health products, using procedures generally

3  accepted by experts in the relevant fields to yield accurate and reliable results. See

4  Complaint at ¶ 44. The Council on Natural Nutrition was established by

5  Defendants and has been used by Defendants for the purpose of selling their

6  products. Id.

7          In addition, the Council on Natural Nutrition does not have a staff of

8  "senior scientific editors" with expertise in evaluating health-related products, and

9  at least one of the "senior scientific editors" is or was an employee of Defendants

10  with no scientific training in the examination or evaluation of nutritional health

11  products. Id. The making of these representations constitutes a deceptive

12  practice, and the making of false advertisements in violation of Sections 5(a) and

13  12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52. Id.

14          Defendants have represented, expressly or by implication, that Dr.

15  Ronald Lawrence, Director of the Council on Natural Nutrition, has endorsed

16  Defendants' products, including G.H 3 and ChitoPlex, based upon his

17  independent, objective evaluation of the products. See Complaint at ¶ 45.

18  Defendants have failed to disclose that Dr. Lawrence and the Council on Natural

19  Nutrition have material connections to Defendants. Id. Among other things, Dr.

20  Lawrence is a paid endorser of Defendants' products and is or was a member of

21  Defendant G.B. Data Systems' Board of Directors. Id.

22          The Council on Natural Nutrition is or was an organization

23  established by Defendants and is or was used for the purpose of advertising and

24  promoting their products. Id. Therefore, the failure to disclose these facts, in light

25  of the representations made, constitutes a deceptive practice, and the making of

26

27

28                                      7

13

SCANNED

1    false advertisements in violation of Sections 5(a) and 12 of the FTC Act, 15

2    U.S.C. §§ 45(a) and 52. Id.

3              Consumers throughout the United States have suffered and continue

4    to suffer substantial monetary loss as a result of the Defendants' unlawful acts or

5    practices. See Complaint at ¶ 46. In addition, Defendants have been unjustly

6    enriched as a result of their unlawful practices. Id. Absent relief, Defendants are

7    likely to continue to injure consumers, reap unjust enrichment, and harm the

8    public interest. Id.

9        **B.    Procedural Summary**

10             On May 27, 2003, the Commission filed its Complaint for Permanent

11   Injunction and Other Equitable Relief in the United States District Court for the

12   Central District of California against Defendants.[1]

13             On May 28, 2003, the Commission filed Pro Hac Vice applications

14   on behalf of Theodore H. Hoppock, Jill F. Dash, Mamie Kresses, David P.

15   Frankel, and Rosemary Rosso.

16             On June 17, 2003, the Commission and Defendant Tepper[2] filed a

17   Stipulation to Extend Time to Respond to Complaint.

18

19

20

21

22

23    [1] The named Defendants in the Complaint include A. Glenn Braswell, JOL

24   Management Co., G.B. Data Systems, Inc., Gero Vita International, Inc.,
     Theraceuticals, Inc., and Ron Tepper.

25

26    [2] The stipulation was by and between Plaintiff Federal Trade Commission
     and Ron Tepper. The parties stipulated that the time in which Defendant Tepper

27   could respond to the Complaint was extended for 27 days.

28                                                    8

14

1    On July 14, 2003, Defendant Braswell[3] filed a Motion to Stay

2 Proceeding Pending Resolution of Criminal Charges and a Memorandum of Points

3 and Authorities in support thereof.

4    On July 14, 2003, Defendant Tepper filed a Motion to Dismiss

5 Complaint.

6    On July 16, 2003, the Commission and Defendants filed a Joint

7 Stipulation to Extend Time to File Answer and to File Rule 16(b) Scheduling

8 Order.

9    On July 17, 2003, Defendants filed an Amended Motion to Stay

10 Proceedings Pending Resolution of Criminal Charges and a Memorandum of

11 Points and Authorities in support thereof.

12    August 4, 2003, Defendant Tepper filed a Joinder in Defendants'

13 Motion to Stay Proceeding Pending Resolution of Criminal Charges.

14    On August 25, 2003, Defendants filed Pro Hac Vice applications on

15 behalf of Christopher R. Cooper and Randall J. Turk.

16    On September 11, 2003, Defendant Braswell, JOL, G.B. Data

17 Systems, GVI and Theraceuticals filed a Joinder in Defendant Tepper's Motion to

18 Dismiss Complaint.

19    On September 15, 2003, a Non-Resident Attorney Application was

20 filed by Mark Stancil on behalf of A. Glenn Braswell.

21    On September 15, 2003, this Court entered an Order Denying

22 Defendant A. Glenn Braswell's Motion to Stay Proceeding Pending Resolution of

23 Criminal Charges.

24 _____

25    [3]  The Motion notes: "This motion is being filed on behalf of Mr. Braswell

26 only. Were the motion to be granted, however, it would make little sense to have the case proceed solely against the corporate defendants. The corporate

27 defendants therefore join this motion."

28                                        9

On September 15, 2003, this Court entered an Order Denying Defendant Ron Tepper's Motion to Dismiss Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6), 9(b) & 9(f).

On September 25, 2003, Defendant Tepper filed an Answer to Complaint and Affirmative Defenses. In the Answer, Defendant Tepper made a Demand for Trial by Jury.

On September 26, 2003, Defendant A. Glenn Braswell, JOL Management Co., G.B. Data Systems, Inc., and Theraceuticals, Inc. filed an Answer and Affirmative Defenses Memorandum.

On October 3, 2003, this Court filed an Order Setting Scheduling Conference for December 1, 2003.

On October 17, 2003, Plaintiff filed a Motion to Strike Various Affirmative Defenses of Defendants A. Glenn Braswell, JOL Management Co., G.B. Data Systems, Inc., Theraceuticals, Inc., and Ron Tepper ("Motion to Strike"), which is before this Court.[4]

## II.  Discussion

### A.   Standard

Federal Rule of Civil Procedure 12(f) provides that "[u]pon motion made by a party . . . the court may order stricken from any pleading any insufficient defense, or any redundant . . . matter." (FED.R.CIV.P. 12(f)). A Rule

---

[4] The FTC's Motion to Strike requests that this Court strike eight affirmative defenses plus two additional statements raised in the Answer filed by A. Glenn Braswell, JOL Management Co., G.B. Data Systems, Inc., Gero Vita International, Inc. and Theraceuticals, Inc. In addition, in the same Motion to Strike, the FTC requests that this Court strike nine affirmative defenses plus two additional statements raised in Defendant Ron Tepper's Answer. (See Motion to Strike at 1.)

10

16

1  12(f) motion to strike is "proper when a defense is insufficient as a matter of law."

2  (See FTC v. Medicor, LLC, 2001 WL 765628, *1 (C.D.Cal.) (citing Schwarzer,

3  Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before*

4  *Trial* ¶ 9:378 (2001)).  It is the moving party's burden to establish the following:

5  (1) the absence of questions of fact; (2) that any questions of law are beyond

6  dispute; (3) that there is no set of circumstances under which the challenged

7  defense could succeed; and (4) presentation of the defense would prejudice the

8  moving party.  (See Schwarzer, at ¶¶ 9:381, 9:375, 9:407.)  Thus, a motion to

9  strike will not be granted if the insufficiency of the defense is not clearly apparent,

10  or if it raises factual issues that should be determined by a hearing on the merits.

11  (See Medicor, 2001 WL 765628 at *1 (citing 5A C. Wright & A. Miller, Federal

12  Practice and Procedure (2d ed. 1990) § 1381 at 678)).  The function of a 12(f)

13  motion to strike is to avoid the expenditure of time and money that must arise

14  from litigating spurious issues by dispensing with those issues prior to trial . . ."

15  Id. (citing Sidney-Vinstein v. A.H. Robins Co, 697 F.2d 880, 885 (9th Cir. 1983).

16

17  **B.  Analysis**

18         The FTC seeks to strike eight of ten affirmative defenses asserted by

19  Defendants.  (See Answer and Affirmative Defenses of Defendant A. Glenn

20  Braswell, JOL Management Co., G.B. Data Systems, Inc., and Theraceuticals, Inc.

21  ("Answer") at 13-14).  This Court addresses each of these below.  At the outset,

22  though, this Court notes the high threshold involved in striking an affirmative

23  defense.  (See Standard, supra.)  To a large extent, in seeking to strike certain

24  affirmative defenses, the FTC is asking this Court to determine factual issues and

25  the merits of the defenses and/or claims asserted.  However, at this juncture of the

26  litigation, this Court cannot do so.  Nonetheless, it should also be noted that while

27

28                                      11

17

1  this Court may not strike the defense at this time, Defendants will still be required
2  to ultimately prove the merits of the defense.

3

4   **1.    This Court Denies the FTC's Motion to Strike Defendants' First**
5        **Affirmative Defense of Good Faith to the Extent it is Asserted**
6        **Against the Granting of a Permanent Injunction**

7        The FTC argues that Defendants' affirmative defense of good faith
8   must be stricken because "the law is well-established that good faith is not a
9   defense to the FTC Act." (See Motion to Strike at 4.) This Court agrees that good
10  faith may not be offered as an affirmative defense to a violation of section 5 of the
11  FTC Act. However, to the extent that the affirmative defense is asserted *against*
12  *the granting of a permanent injunction,* it is permitted.

13       A careful reading of the case law makes it clear that while good faith
14  is not relevant to whether the actual violation of section 5 of the FTC Act
15  occurred, it *is* relevant to the issue of whether a permanent injunction is
16  appropriate. (See Medicor, 2001 WL 765628 at **2-3; Hang-Ups, 1995 WL
17  914179 at *3). This is because the granting of a permanent injunction requires
18  that "there exist some cognizable danger of recurrent violation." (See Hang-Ups,
19  1995 WL 914179 at *3 (citing United States v. W.T. Grant Co., 345 U.S. 629, 633
20  (1953)). The determination of whether the alleged violations are likely to recur,
21  requires the court to look at: (1) the deliberateness . . . of the present violation, and
22  (2) the violator's past record." (See id. (citing Sears, Roebuck & Co. v. FTC,
23  Id. 676 F.2d 385, 392 (9th Cir. 1982)). As the court in Hang-Ups noted, "good
24  faith on the part of the defendant[s] could be determinative of the first factor and
25  therefore preclude injunctive relief." (See Hang-Ups, 1995 WL 914179 at *3.)

26

27

28                                          12

18

1    Since the FTC is seeking a permanent injunction against Defendants

2    (see Complaint at 1-2), the issue of whether the wrongful acts were "deliberate" is

3    indeed relevant to the issue of whether a permanent injunction is appropriate. (See

4    Complaint at 1-2.) This Court declines the FTC's invitation to ignore the Medicor

5    and Hang-Ups decision and denies the FTC's Motion to Strike Corporate

6    Defendants' good faith affirmative defense *to the extent it is asserted against the*

7    *granting of a permanent injunction.*[5]

8

9    **2.    This Court Denies the FTC's Motion to Strike Defendants' Second**

10        **Affirmative Defense of Laches.**

11        The FTC moves to strike Defendants' laches affirmative defense

12    because "it is well established that laches is not a defense to a civil suit to enforce

13    a public right or to protect a public interest." (See Motion to Strike at 4.)  In

14    response, Defendants argue that the law is, in fact, not well-settled, and that the

15    laches defense requires a factual determination making it inappropriate to strike it

16    at this juncture.  (See Opposition at 8-9.)

17

18

19    ─────────────

20    [5] The FTC cites numerous cases that purportedly support the proposition

21    that good faith is not a defense to violations of section 5 of the FTC Act.

        However, the FTC's argument is not wholly persuasive for several reasons.  First,

22    while the FTC gives great weight to decisions from several other jurisdictions, it

        gives short shrift to two cases within this jurisdiction that expressly upheld the

23    assertion of a good faith defense against an FTC complaint seeking permanent

        injunctive relief and individual liability (i.e. the Medicor and Hang-Ups

24    decisions).  Second, although the FTC suggests otherwise, the ultimate outcome of

25    the Medicore case is irrelevant to whether the affirmative defense is sufficient to

        survive a motion to strike.  Third, in support of its position, the FTC cites Hang-

26    Ups; however, as both parties noted in their Oppositions, it is clear that the

27    quotation used was taken *completely out of context.*

28                                    13

1            Traditionally, the doctrine of laches has not been available against the

2    government in a suit by it to enforce a public right or protect a public interest.

3    (See Hang-Ups 1995 WL 914179 at *4 (quoting United States v. Ruby Co., 588

4    F.2d 697, 705 n.10 (9th Cir. 1978)).  However, laches "may be a defense against

5    the government if 'affirmative misconduct' by the government is shown." (Id.

6    (quoting Ruby, 588 F.2d at 705 n.10)).  The applicability of laches against the

7    government is determined on a case-by-case basis.  (See Hang-Ups, 1995 WL

8    914179 at *4 (noting that "[t]he facts of the case should decide whether there has

9    been affirmative misconduct by the government such that laches might apply");

10   Occidental Life Ins. Co. of California v. E.E.O.C., 432 U.S. 355, 373 (1977)

11   (determined on a case-by-case basis)).

12           Based on the above, the granting of the FTC's Motion to Strike this

13   affirmative defense under Fed.R.Civ.P. 12(f) is improper because (1) it is not

14   beyond dispute whether the laches defense is applicable; (2) there would be a set

15   of circumstances under which the laches defense could succeed; and (3) even if

16   the laches defense does apply, a potential question of fact regarding the presence

17   of "affirmative misconduct" by the government exists.  In addition, while the FTC

18   argues that Defendants have conceded that they do not intend to allege bad faith or

19   improper purpose and that Defendants' assertion that affirmative misconduct may

20   be present is "nothing but bare bones conclusory allegations," Defendants

21   vigorously reject this assertion, and note that the FTC's suggestion that

22   Defendants have conceded the absence of affirmative misconduct in prior

23   pleadings is "absurd." (See Opposition at 9.)  This further supports this Court's

24   decision not to strike Defendants' affirmative defense of laches at this time.

25

26

27

28                                          14.

20

3.    **This Court Grants the FTC's Motion to Strike Defendants' Third Affirmative Defense of Failure to Exhaust Administrative Remedies**

The FTC argues that Defendants' third affirmative defense, failure to exhaust administrative remedies, must be stricken for several reasons. First, "[t]he plain reading of 13(b) of the FTC Act . . . makes clear that the Commission is not required to pursue its case administratively prior to invoking this Court's jurisdiction." (See Motion to Strike at 5.) Second, the FTC argues that the FTC's authority to bring Section 13 (b) actions directly in federal court has been examined and upheld by numerous courts. (Id.)

The right to bring Section 13(b) actions directly in federal court has indeed been examined and upheld by numerous district and appellate courts. (See Motion to Strike at 5 (citing United States v. JS & S Group, Inc., 716 F.2d 451 (7th Cir. 1983) (holding that the FTC may seek a permanent injunction in federal court . . . without having first instituted administrative proceedings))). This authority was restated in the Ninth Circuit in FTC v. Pantron I Corp., where the court held that Section 13(b) "gives the federal courts broad authority to fashion appropriate remedies for violations of the [FTC] Act." (See Pantron, 33 F.3d 1312, 1314-15 (9th Cir. 1994)). The language of the FTC Act states: "Whenever the Commission has reason to believe . . . that any person, partnership, or corporation is violating or is about to violate, any provision of law enforced by the Federal Trade Commission . . . the Commission may . . . bring suit in a district court of the United States to enjoin any such act or practice. (See 15 U.S.C. § 53(b)(1) (2003)).

Contrary to Defendants' argument, there is no requirement in either Section 13(b) or Section 53(b) that administrative remedies be exhausted before

15

21

1  the FTC is authorized to bring suit in a district court of the United States.  Further,

2  the lack of any case law to the contrary leads this Court to grant the FTC's Motion

3  to Strike Defendants' affirmative defense of failure to exhaust administrative

4  remedies.

5

6      **4.    This Court Grants the FTC's Motion to Strike Defendants'**

7           **Fourth Affirmative Defense of Statute of Limitations**

8                Defendants argue that the FTC's claims under Section 13(b) are

9  subject to the three-year statute of limitations present in Section 19 of the FTC

10  Act. (See Opposition at 10-11.) The gist of Defendants' argument is that since

11  ancillary relief in the form of consumer relief is available under Section 13(b),

12  claims under Section 13(b) must at least comply with the consumer relief

13  provisions of Section 19, including the three-year statute of limitations. (See

14  Opposition at 13-14.) In contrast, the FTC contends that, in addition to case law,

15  the clear language of Section 19 precludes the application of the three-year statute

16  of limitations to actions brought under Section 13(b). (See Motion to Strike at 7.)

17                Under Section 13(b), ancillary equitable relief, including rescission of

18  contracts and monetary relief in the form of consumer redress and disgorgement

19  for violations of the FTC Act is authorized. (See e.g., Pantron I Corp., 33 F.3d

20  1088 (9th Cir. 1994); FTC v. Silueta Dist., Inc., 1995 WL 215313, *7 (N.D. Cal.

21  1995) (noting that the Ninth Circuit's interpretation of Section 13(b) allows

22  federal courts to broadly apply their equitable powers)). Although Section 13(b)

23  does not explicitly state or refer to any statute of limitations (see Motion to Strike

24  at 7), several courts have held that "the three-year statute of limitations contained

25  in Section 19 of the FTC Act is *not* applicable to Section 13(b) cases." (See FTC

26  Minuteman Press, 53 F.Supp.2d 248 (E.D. N.Y. 1998); United States v. Building

27

28                                      16

22

1  Inspector of America, Inc., 894 F. Supp. 507, 514 (D. Mass. 1995)).[6]  Section 19

2  provides in relevant part: "Remedies in this section are in addition to, and not in

3  lieu of, any other remedy or right of action provided by State or Federal law.

4  *Nothing in this section shall be construed to affect any authority of the*

5  *Commission under any other provision of law."*

6       Based on the absence of language in Section 13(b) indicating the

7  presence of a statute of limitations and the clear language in Section 19, this Court

8  finds that the FTC's Motion to Strike Defendants' statute of limitations affirmative

9  defense should be granted.

10

11     **5.     This Court Denies the FTC's Motion to Strike Defendants' Fifth**

12             **Affirmative Defense of Offset/Setoff**

13       In seeking to strike the affirmative defense of offset/setoff, the FTC

14  argues that the appropriate measure of equitable monetary relief pursuant to

15  Section 13(b) of the FTC Act is the full amount lost by consumers without regard

16  to Defendants' profits and with a deduction only for refunds already made.  (See

17  Motion to Strike at 8 (citing FTC v. Febre, 128 F.3d 530, 536 (7th Cir. 1997)).

18  Defendants respond that "the FTC's objections to offset of monetary relief are

19  premature and unsupported."  (See Opposition at 15.)  Moreover, Defendants

20  argue that the determination of whether benefits received by consumers can be

21  considered in determining relief is a factual matter.  (Id. at 18.)

22       Based on the numerous cases cited by both parties in support of their

23  respective positions, this Court finds that a determination as to the applicability of

24

25

26       [6] As the FTC notes in its Reply, "the Commission determined to pursue this
    case in federal court, pursuant to 13(b) *rather than through . . . Section 19(a)(2) . .*
27  *. a decision . . . within its sound discretion."*  (See Reply at 5 n.4.)

28                                   17

23

1  this affirmative defense at this time is premature. In other words, the law that an

2  offset/setoff is not allowed is not "beyond dispute." In fact, while the FTC argues

3  that *no* deductions are proper, the FTC's own case law demonstrates that the types

4  of "offset/setoff" sought by Defendants are frequently deducted from overall

5  judgments. For example, in <u>Medicor</u>,[7] the court affirmed the $16.6 million

6  disgorgement judgment only after noting that the FTC "presented the declaration

7  of an accountant indicating that *refunds, charge backs, and returns have been*

8  *deducted*. (See <u>Medicor</u>, 217 F.Supp.2d at 1057-58 (emphasis added)). In <u>FTC v.</u>

9  <u>Amy Travel Serv. Inc.</u>,[8] the court actually affirmed a reduction for consumers who

10  received a benefit. (See <u>Amy</u>, 875 F.2d 564, 572 (7th Cir. 1989) (noting that "the

11  magistrate correctly acknowledged the existence of satisfied customers in

12  computing the amount of defendants' liability—customers who actually took

13  vacation trips were excluded when the magistrate computed the amount of

14  restitution awarded")). Finally, in <u>FTC v. SlimAmerica, Inc.</u>, the court affirmed

15  an $8.4 million redress judgment and stated, "[t]he appropriate measure for redress

16  is [the] aggregate amount paid by consumers, less *refunds* made by defendants."

17  (See <u>SlimAmerica</u>, 77 F.Supp.2d 1263, 1275-76 (S.D. Fla. 1999)).

18       Based on the above, it is clear that at least some types of deductions

19  Defendants request have been permitted. This is not to say that this Court will

20  allow them here. Rather, this Court must assess this issue in light of the particular

21  facts of this case as compared to the facts of these other cases. Thus, this Court

22  denies the FTC's Motion to Dismiss Defendants' offset/setoff affirmative defense.

23

24

25

26  [7] See Motion to Strike at 9.

27  [8] See FTC's Motion to Strike at 9.

28                                          18

24

6.   **This Court Grants the FTC's Motion to Strike Defendants' Sixth**
**Affirmative Defense of First Amendment Violation**

Defendants incorporate the arguments explained in Defendant
Tepper's Motion to Dismiss the Complaint and further assert that the FTC's
theory "that a statement is false or misleading simply because the speaker lacked
substantiation at the time the statement was made is unconstitutional." (See
Opposition at 20.) In response, the FTC argues that this affirmative defense must
be stricken. This Court agrees with the FTC.

First, this Court has already ruled that "the mere initiation of this
lawsuit does not restrict in any way the [Defendant's] ability to engage in truthful,
non-misleading speech . . . At this time, this Court finds that the Commission's
allegations, if proven, will establish that Defendants have engaged in commercial
speech that is either false or misleading, neither of which would result in the
infringement of [Defendants'] First Amendment right of freedom of speech." (See
Motion to Strike at 10 (citing Order Denying Defendant Ron Tepper's Motion to
Dismiss Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1),
12(b)(6), 9(b) & 9(f) at 19 (Sept. 15, 2003))). As such, This Court finds that
Defendants' affirmative defense must be stricken because the issue has already
been decided by this Court.   (See FED.R.CIV.P. 12(f) (noting that "upon motion
made by a party . . . the court may order stricken from any pleading any
insufficient defense, or any redundant . . . matter")).

Further, as the FTC argues, the FTC's advertising substantiation
requirements have been upheld by numerous circuits, including the Ninth Circuit
in Sears, Roebuck & Co. v. FTC, where the court rejected Sears' argument that its
First Amendment rights had been violated. (See Sears, 676 F.2d 385, 399-400
(9th Cir. 1982)). The court stated: "The Commission may require prior reasonable

19

25

1   substantiation of product performance claims after finding violations of the [FTC]

2   Act, without offending the First Amendment." (Id.) Thus, a violation of the First

3   Amendment does not result from the mere initiation of a lawsuit.

4

5       **7.    This Court Denies the FTC's Motion to Strike Defendants'**

6           **Seventh Affirmative Defense of Waiver**

7           Defendants assert that assessing the scope of consumer harm is an

8   issue that cannot be addressed until after "the evidence is in." (See Opposition at

9   22.) In other words, Defendants argue that there is a significant issue of fact that

10  is unresolved at this stage of the pleadings, making it inappropriate to strike

11  Defendants' affirmative defense.  In response, the FTC argues that if the FTC is

12  able to prove that "consumers' purchasing decisions were founded, in part, on

13  false, deceptive or unsubstantiated claims, then such claims are clearly actionable

14  under longstanding and well-established precedent, irrespective of whether

15  consumers entered into contracts." (See Motion to Strike at 12.)  Again, based on

16  the parties' own contentions, it is clear that the determination before this Court is

17  premature at the pleading stage.

18          The FTC Act may be violated if a defendant "induces the first contact

19  through deception, even if the buyer later becomes fully informed before entering

20  the contract." (See Resort Rental Car Sys., Inc., 518 F.2d 962, 964 (9th Cir.

21  1975)).  Since the determination of whether a waiver is present hinges on a finding

22  of deception, this question of fact requires this Court to deny the FTC's Motion to

23  Strike Defendants' affirmative defense of waiver.

24

25

26

27

28                                          20

26

8.   **This Court Grants the FTC's Motion to Strike Defendants'**
     **Eighth Affirmative Defense That an Adequate Remedy at Law for**
     **Consumer Relief Exists**

Defendants' eighth affirmative defense is that injunctive relief is not appropriate in this case because there is an adequate remedy at law." (See Opposition at 23.) Defendants argue once more that "consumer relief claims must be pursued under Section 19," and the FTC should not "be encouraged to circumvent the conditions Congress placed upon suits seeking consumer relief in Section 19 of the FTC Act." (See Opposition at 23.)[9] In response, the FTC cites Hang-Ups, where the court found that the "existence of legal remedies for individual consumers under state law does not bar the FTC from seeking equitable relief under the FTC Act; to find otherwise would nullify much of the FTC Act." (See Hang-Ups, 1995 WL 914179 at *4.)

This Court agrees with the rationale in Hang-Ups, and therefore finds that Defendants' affirmative defense of "adequate remedy at law" must be stricken as insufficient.

9.   **Defendants' Ability to Assert Additional Affirmative Defenses is**
     **Governed by FED.R.CIV.P. 15**

The FTC seeks to prevent Defendants from asserting additional defenses in violation of Federal Rule of Civil Procedure 12(b). (See Motion to Strike at 17.) Specifically, it takes issue with Defendants' statement in their Answer that they "reserve the right to *assert additional affirmative defenses* that

---

[9] Again, this Court notes that restrictions placed on Section 19 are not relevant as the FTC has chosen to pursue this cause of action under Section 13(b) of the FTC Act.

21

1   become apparent during discovery." (See Answer at 14 (emphasis added)).  This

2   Court agrees with the FTC that Defendants' right, if any, to assert additional

3   affirmative defenses is governed by Fed. R. Civ. P. 15 and an appropriate request

4   to seek leave to amend the Answer to do so.

5       10.   **To the Extent that the Relief Sought by the FTC is Limited to a**

6                     **Permanent Injunction and Other Ancillary Relief Under Section**

7                     **13(b), Defendants' Request for a Jury Trial is Denied**

8           Defendants argue that they are entitled to a trial by jury because the

9   relief sought by the FTC is "so significant that it cannot fairly be said [to be] a

10  request for prospective injunctive relief." (See Opposition at 25.)  In response, the

11  FTC contends that Defendants have no right to a jury trial under Section 13(b)

12  because the relief sought is limited to "a permanent injunction and other equitable

13  ancillary relief derived from the Court's authority to issue such a permanent

14  injunction, pursuant to Section 13(b) of the FTC Act." (See Motion to Strike at 18

15  (citing FTC v. H.N. Singer, Inc., 1982 WL 1907 **38-39 (N.D. Cal. 1982); Hang-

16  Ups, 1995 WL 914179 at *3).

17          This Court agrees with the FTC that the cases cited by it make clear

18  that there is no right to a trial by jury in an action under Section 13(b) of the FTC

19  Act, where the monetary relief the FTC seeks is not punitive, but rather is ancillary

20  to the requested injunctive relief.[10]  To the Extent that Defendants believe such

21  monetary relief may become unlimited or punitive in nature, the FTC is bound by

22  its representations that it "would limit its request for monetary relief to the amount

23  paid by consumers, less any refunds," and more importantly, it is bound by the

24  equitable nature of the relief sought.

25

26      [10] This Court also notes that Defendants have cited no case law in support

27  of their argument to the contrary.

28                        22

**III. Conclusion**

       Based on the foregoing, this Court **Denies** the FTC's Motion to Strike Defendants' **First, Second, Fifth and Seventh** affirmative defenses. This Court **Grants** the FTC's Motion to Strike as to Defendants' **Third, Fourth, Sixth, and Eighth** affirmative defenses. This Court finds that Defendants' ability to assert additional affirmative defenses is governed by FED.R.CIV.P. 15. This Court further finds that, to the extent that the relief sought by the FTC is limited to a permanent injunction and other ancillary relief under Section 13(b), Defendants' request for a jury trial is denied.

       IT IS SO ORDERED.

DATED:    NOV 1 0 2003

**DICKRAN TEVRIZIAN**
Dickran Tevrizian, Judge
United States District Court

23

RightFAX          11/14/2003 8:22   PAGE   1/24    RightFAX

**From:**      Name:       United States District Court
                           312 North Spring Street
                           Los Angeles, CA 90012
               Voice Phone: (213) 894-5474


**To:**        Name:       Charles Kreindler
               Company:

                           601 W 5th St, 12th Fl,
               City/State: Los Angeles, CA 90071-2025
               Fax Number: 213-489-7532


# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA



## Automated Document Delivery Service

*Notice pursuant to Rule 77(d) FRCiv.P*

*The attached copy is hereby served upon you pursuant to Federal Rule of Civil Procedure 77(d).*

Fax Notes:

Case 2:03-CV-03700 : FTC V. A GLENN BRASWELL

### Switch to e-mail delivery and get these documents sooner!
### To switch, complete and submit
### Optical Scanning Enrollment / Update form G-76.
### Call 213-894-5474 for help and free technical support.

*If you received this document in error because the attorney with whom this document is directed is no longer the attorney on the case, a Notice of Change of Attorney Information, form G-6, must be filed. If there are other cases which you've received documents for which you are no longer the attorney, separate notices must be filed for each case. Failure to do so will result in the continued sending of documents to you. Form G-6 is available on the court's website at www.cacd.uscourts.gov or at the Clerk's Office.*

Date and time of transmission:        Friday, November 14, 2003 8:21:26 AM
Number of pages including this cover sheet: 24

## CERTIFICATE OF SERVICE

I, Marie Carney, a paralegal at The Lustigman Firm, P.C., counsel for the defendant in the within action, do hereby certify that true and correct copies of the following documents:

**DEFENDANT'S OPPOSITION TO FTC'S MOTION TO STRIKE AFFIRMATIVE DEFENSES, JURY DEMAND AND NON-EXISTENT MOTION TO DISMISS**

**AFFIDAVIT OF ANDREW B. LUSTIGMAN**

were served by the Electronic Court Filing system (ECF) on the 19th day of June 2008 upon counsel for plaintiff in the within action:

Kerry O'Brien (Cal. Bar No. 149264)
Sarah Schroeder (Cal. Bar No. 221528)
Federal Trade Commission
901 Market Street, Suite 570
San Francisco, CA 94103
Telephone: (415)848-5189
Fax: (415)848-5184
E-mail address: kobrien@ftc.gov

Dated June 19, 2008

Marie Carney