1  WILLIAM BLUMENTHAL
   General Counsel
2
   Kerry O'Brien (Cal. Bar No. 149264)
3  Sarah Schroeder (Cal. Bar No. 221528)
   Evan Rose (Cal. Bar No. 253478)
4  Federal Trade Commission
   901 Market Street, Suite 570
5  San Francisco, CA 94103
   Telephone:  (415) 848-5189
6  Fax:  (415) 848-5184
   E-mail address:  kobrien@ftc.gov
7  Attorneys for Plaintiff

8

9            **UNITED STATES DISTRICT COURT**
            **NORTHERN DISTRICT OF CALIFORNIA**
10               **San Francisco Division**

11  FEDERAL TRADE COMMISSION,
                                              No. CV-08-00822 SI
12      Plaintiff,

13      v.                                    Hearing Date:   July 18, 2008
                                              Hearing Time:   9:00 a.m.
14  MEDLAB, INC.,                             Courtroom:      10, 19th Floor

15  PINNACLE HOLDINGS, INC.,

16  METABOLIC RESEARCH ASSOCIATES,            **PLAINTIFF'S REPLY TO**
    INC.,                                     **DEFENDANTS' OPPOSITION TO**
17                                            **PLAINTIFF'S MOTION TO**
    U.S.A. HEALTH, INC., and                  **STRIKE AFFIRMATIVE**
18                                            **DEFENSES AND JURY DEMAND**
    L. SCOTT HOLMES,
19  individually and as an officer of Medlab, Inc.;
    Pinnacle Holdings, Inc.; Metabolic Research
20  Associates, Inc.; and U.S.A. Health, Inc.,

21      Defendants.

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

3

I.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4

II.   The Court Should Strike Ten of Defendants' Affirmative Defenses . . . . . . . . . . . . . . . . . 1

5

    A.    Courts Routinely Grant Motions to Strike in the Interest of Judicial Economy . . 1

6

    B.    Defendants Fail to Allege Sufficient Misconduct to Support Their Estoppel and

7

          Laches Defenses (Second Defense) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

8

        1.    Defendants Misstate the FTC's Complaint . . . . . . . . . . . . . . . . . . . . . . . . . 2

9

        2.    Defendants Fail to Meet the High Burden for an Estoppel Action Against

10

            The Government . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

11

            a.    Prong One: as a Matter of Law, Delay Is Not "Affirmative

12

               Misconduct". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

13

            b.    Prong Two: the Public Will Suffer If the Court Permits the

14

               Defendants' Estoppel Defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

15

        3.    The Prevailing Opinion in the Ninth Circuit Is That Laches Is Unavailable

16

            as a Defense in a Government Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

17

    C.    The FTC Is Not Required to Exhaust Administrative Remedies (Third Defense)  5

18

    D.    The FTC Is Entitled to Seek Full Redress for Injured Consumers; Defendants

19

          Are Not Entitled to Offsets for the Cost of Their Scheme (Fourth Defense)  . . . . 6

20

    E.    False or Misleading Commercial Speech Is Not Afforded First Amendment

21

          Protection (Fifth Defense) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

22

    F.    Defendants' Allege Lack of Notice, Even If True, Does Not Amount to a

23

          Violation of Their Due Process Rights (Sixth Defense) . . . . . . . . . . . . . . . . . . . 8

24

    G.    "Inconsistent Enforcement" Is Not a Defense in a Government Action Unless the

25

          Defendants Alleges a Discriminatory Purpose for the Prosecution, Such as Race,

26

          Religion, or Other Arbitrary Classification (Sixth and Thirteenth Defenses) . . . 10

27

        1.    "Selective Prosecution" Is Not a Defense . . . . . . . . . . . . . . . . . . . . . . . 11

28

        2.    There Is No Constitutional Right to Settlement . . . . . . . . . . . . . . . . . . . . 11

1            3.    Defendants Have Served Burdensome Discovery on Plaintiff in Search of

2             Evidence for Their Insufficiently Pled and Legally Null "Selective

3             Prosecution" Defense  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

4    H.    The FTC Can Not Waive its Duty to Enforce the Law; Nor Does a Money-back

5        Guarantee Waive a Claim under the FTC Act (Ninth Defense)  . . . . . . . . . . . . 12

6    I.     Cessation of Illegal Activity, Especially after Government Intervention, Does Not

7        Make an Action Moot (Eleventh Defense)  . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

8    J.     The Existence of an Adequate Remedy at Law Is Not a Defense in an FTC Action

9        (Tenth Defense) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

10  III.  Legal Authority Does Not Support Defendants' Demand for a Jury Trial  . . . . . . . . . . 14

11  IV.  Because Defendants Clarified That They Are Not Moving to Dismiss the Complaint,

12      Plaintiff Withdraws its Request to Deny Such Motion  . . . . . . . . . . . . . . . . . . . . . . . . . 15

13  V.   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

3

## Cases

*Boddie v. Connecticut*,
  401 U.S. 371 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 9

*Chevron, U.S.A, Inc. v. United States*,
  705 F.2d 1487 (9th Cir. 1983)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4

*Cleveland Bd. of Educ. v. Loudermill*,
  470 U.S. 532 (1985)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 8-9

*Dura Lube Corp.*,
  1999 FTC LEXIS 251 (Aug. 31, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 9

*FTC v. Braswell*,
  No. CV 03-3700 DT (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5-7

*FTC v. Bronson Partners, FTC v. Bronson Partners, LLC*,
  2006-1 Trade Cases ¶ 75,171 (D. Conn. 2006)  . . . . . . . . . . . . . . . . . . . . . . . . Page 6-7

*FTC v. Evans Products Co.*,
  775 F.2d 1084 (9th Cir. 1985)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 14

*FTC v. Figgie Int'l*,
  994 F2d. 595 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 6-7, 14

*FTC v. Hang Ups Art*,
  1995 WL 914179 (C.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5, 13-14

FTC *v. H. N. Singer, Inc.*,
  668 F.2d 1107 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 14

*FTC v. Int'l Diamond Corp.*,
  1983 WL 1991, 1983-2 Trade Cas. (CCH) (N.D. Cal. 1983) . . . . . . . . . . . . . . . Page 5, 7

*FTC v. Kuykendall*,
  371 F.3d 745 (10th Cir. 2004)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 7

*FTC v. Magui Publishers, Inc.*,
  1991-1 Trade Cas. (CCH) (C.D. Cal. 1991)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 7

*FTC v. Minuteman Press, LLC*,
  53 F. Supp. 2d 248 (E.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 14

*FTC v. Pantron I Corp.*,
  33 F.3d 1088 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5, 8

*FTC v. QT, Inc.*,
  448 F. Supp. 2d 908 (N.D. Ill. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 6-7

*FTC v. Verity Int'l, Ltd.*,
  443 F.3d 48 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 6-7

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*FTC. v. Universal-Rundle Corporation*,
   387 U.S. 244 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 11

*Gorran v. Atkins Nutritionals, Inc.*,
   464 F. Supp. 2d 315 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 7

*Hart v. Baca*,
   204 F.R.D. 456 (C.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 1

*Heckler v. Community Health Services of Crawford County*,
   467 U.S. 51 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 3

*In re Modern Marketing Service, Inc., et al.*,
   69 F.T.C. 1077 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 10

*In re C. E. Niehoff & Co.*,
   51 F.T.C. 1114, 1153 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 11

*In the Matter of Basic Research, L.L.C.*,
   FTC Docket No. 9318, 2004 WL 2682854 (F.T.C.) (Nov. 4, 2004)  . . . . . . . . . . . . Page 9

*In the Matter of Basic Research*,
   2006 FTC LEXIS 18 (Feb. 21, 2006)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 9-10

*INS v. Miranda*,
   459 U.S. 14 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 3

*Jaa v. INS*,
   779 F.2d 569 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 2-3

*Office of Personal Management v. Richmond*,
   496 U.S. 414 (1990)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4

*Pearson v. Shalala*,
   64 F.3d 650 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 8

*Sears, Roebuck and Co.*,
   95 F.T.C. 406 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 13

*SEC v. Blatt*,
   583 F.2d 1325 (5th Cir. 1978)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 7

*SEC v. Lorin*,
   76 F.3d 458 (2d Cir. 1996)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 7

*SEC v. Randy*,
   1995 WL 616788 (N.D. Ill. Oct. 17, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5

*Sidney-Vinstein v. A.H. Robins Co.*,
   697 F.2d 880 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 1

*Skoor v. Tilton*,
   2008 WL 152144 (S.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 12

*United States v. Armstrong*,
   517 U.S. 456  (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 10

*United States v. Lee*,
     1995 WL 325972 (N.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4

*United States v. Leggett & Platt*,
     542 F.2d 655 (6th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 11

*United States v. Ruby*,
     588 F.2d 697 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5

*United States v. Sobkowicz*,
     993 F.2d 886, 1993 WL 148093 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . Page 4

*United States v. Summerlin*,
     310 U.S. 414 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 4

*Weatherford v. Bursey*,
     429 U.S. 545 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 12

*Weight Watchers Int'l., Inc. v. FTC*,
     47 F.3d 990 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 11

*Weinberger v. Romero-Barcelo*,
     456 U.S. 305 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5

*Worley v. Harris*,
     666 F.2d 417 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 3

*Yoo v. INS*,
     534 F.2d 1325 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 3

**Statutes**

Federal Rule of Civil Procedure 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 1

Federal Rule of Civil Procedure 12(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 1

1 | **MEMORANDUM OF POINTS AND AUTHORITIES**

2 | **I.    Introduction**

3 | On June 24, 2008, plaintiff, the Federal Trade Commission ("FTC" or "Commission")

4 | moved to strike ten of defendants' fifteen affirmative defenses, along with defendants' demand

5 | for a jury trial. *Plaintiff's Motion to Strike Affirmative Defenses and Jury Demand* (Dkt # 20)

6 | ("Motion to Strike"). Defendants filed an opposition challenging plaintiff's motion in its entirety.

7 | *Defendants' Opposition to FTC's Motion to Strike Affirmative Defenses, Jury Demand, and Non-*

8 | *Existent Motion to Dismiss* (Dkt # 34) ("Opposition"). Defendants' opposition, however,

9 | misstates key legal standards and cites numerous cases that actually support the FTC's motion.

10 | Thus, the FTC continues to assert that its motion should be granted.

11 | **II.    The Court Should Strike Ten of Defendants' Affirmative Defenses**

12 | **A.    Courts Routinely Grant Motions to Strike in the Interest of Judicial Economy**

13 | Courts routinely grant motions to strike affirmative defenses where the motion helps

14 | streamline the case and promotes judicial economy. *Hart v. Baca*, 204 F.R.D. 456, 457 (C.D.

15 | Cal. 2001) (where a "motion [to strike] may have the effect of making the trial of the action less

16 | complicated, or have the effect of otherwise streamlining the ultimate resolution of the action, the

17 | motion to strike will be well taken") (internal citations omitted) (case cited by defendants).

18 | Indeed, the "function of a 12(f) motion to strike is to avoid the expenditure of time and money

19 | that must arise from litigating spurious issues by dispensing with those issues prior to trial."

20 | *Sidney-Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir. 1983). Moreover, contrary to

21 | defendants' assertion in the Introduction of their Opposition, Federal Rule of Civil Procedure

22 | 12(f) applies to both cases in law and equity. Federal Rule of Civil Procedure 1 ("These rules

23 | govern the procedure in all civil actions and proceedings in the United States district courts . . .

24 | They should be construed and administered to secure the just, speedy, and inexpensive

25 | determination of every action"). Plaintiff's request for ancillary equitable relief does not require

26 | the Court to consider immaterial issues. Granting the FTC's motion will preclude the defendants

27 | from propounding pointless, resource-consuming discovery on the FTC, and from wasting the

28 | Court's and the FTC's time at trial by raising irrelevant facts and spurious legal arguments.

1

2

**B.    Defendants Fail to Allege Sufficient Misconduct to Support Their Estoppel and Laches Defenses (Second Defense)**

3    The Court should strike defendants' estoppel and laches defenses because defendants

4    misstate the Complaint's allegations, misstate the correct legal standards for those defenses, and

5    fail to allege facts sufficient to give rise to those defenses.  The following section highlights

6    defendants' errors, sets forth the correct legal standard, and explains how the defendants have

7    failed to meet those standards.

8

**1.    Defendants Misstate the FTC's Complaint**

9    The FTC's Complaint alleges that the defendants made false and misleading claims in

10    advertisements for their weight-loss product containing citrus aurantium.  *Complaint for*

11    *Injunctive and Other Equitable Relief* (Dkt # 1) at ¶¶ 14-18.  The Complaint alleges that

12    defendants began selling the product at issue in 2005.  *Id.* at ¶ 13.  Defendants ignore the plain

13    language of the Complaint and assert estoppel and laches defenses because the FTC is

14    challenging "conduct taking place a decade ago."  Opposition at 7.[1]  Even if this were true,

15    defendants grossly misstate Ninth Circuit law regarding when a party can assert estoppel and

16    laches defenses against the government.

17

18

**2.    Defendants Fail to Meet the High Burden for an Estoppel Action Against the Government**

19    Defendants' estoppel defense faces multiple hurdles.  First, defendants must meet the

20    threshold test for all estoppel cases and prove that they relied on advice from the FTC to their

21    detriment.[2]  Even if defendants could satisfy this threshold test, they would have to contend with

22    _____

23    [1]    While the FTC's discovery requests have sought information about an earlier formulation

24    of defendants' product when it contained ephedra, the Complaint does not challenge any
    advertisements associated with the ephedra product.

25    [2]    The Ninth Circuit "test for estoppel has four parts: (1) The party to be estopped must

26    know the facts; (2) He must intend that his conduct shall be acted on or must so act that the party
    asserting the estoppel has a right to believe it is so intended; (3) The latter must be ignorant of

27    the facts; and (4) he must rely on the former's conduct to his injury."  *Jaa v. INS*, 779 F.2d 569,
    571 (9th Cir. 1985).  Defendants fail to allege facts that would satisfy this threshold test,

28    including how the FTC gave them a "green light" to run deceptive advertisements for their citrus

1   other requirements because they are asserting estoppel against the government. *Jaa v. INS*, 779

2   F.2d 569, 571-72 (9th Cir. 1985) ("A party asserting estoppel against the government must begin

3   by demonstrating the traditional elements, but he must do more, for 'the Government may not be

4   estopped on the same terms as any other litigant.'") (*citing Heckler v. Community Health Services

5   of Crawford County*, 467 U.S. 51, 60 (1984)). The Ninth Circuit articulated two additional

6   requirements. *Id.* "First, the government's actions must have amounted to 'affirmative

7   misconduct.'" *Id.* (numerous supporting citations omitted). "Second, even affirmative

8   misconduct will not estop the government unless 'the government's wrongful conduct threatened

9   to work serious injustice and . . . the public's interest would not be unduly damaged by the

10  imposition of estoppel.'" *Id.* (*citing Worley v. Harris*, 666 F.2d 417, 421 (9th Cir. 1982). The

11  following sections discuss this two-part test in more detail.

12  **a.    Prong One: as a Matter of Law, Delay Is Not "Affirmative**

13  **Misconduct"**

14  Delay is not considered to be affirmative misconduct. Defendants' only allegation of

15  "affirmative misconduct" is that the FTC delayed in challenging defendants' advertisements.

16  While defendants cite the case *Yoo v. INS*, 534 F.2d 1325, 1329 (9th Cir. 1976), for the

17  proposition that "government inaction can qualify as affirmative misconduct" (Opposition at 6), a

18  subsequent Supreme Court case overruled this aspect of the *Yoo* case and clarified that mere

19  unexplained delay does not show misconduct. *INS v. Miranda*, 459 U.S. 14, 18-19 (1982); *see

20  also Jaa,* 779 F.2d at 572 ("Both cases [*Yoo v. INS* and a similar case] inferred misconduct from

21  mere unexplained delay, and to that extent have been overruled by *Miranda*."). Because delay is

22  not considered affirmative misconduct, the Court should strike defendants' estoppel defense.

23  **b.    Prong Two: the Public Will Suffer If the Court Permits the**

24  **Defendants' Estoppel Defense**

25  Defendants also fail to allege facts that would meet the second prong of the Ninth

26  _____

27  aurantium product. Instead, they imply that they relied on the fact that the FTC did not
    challenge advertisements for their ephedra product to protect their representations for the citrus
28  aurantium product. Opposition at 6-7.

1  Circuit's estoppel test pertaining to government entities. As mentioned above, to prevail against

2  the government the defendants must show that they will suffer serious injustice and that the

3  imposition of estoppel will not damage the public's interest. Here, the defendants have failed to

4  allege how they have suffered an injustice, given that they can continue to truthfully advertise

5  their products. Furthermore, it is the public, not the defendants, who would suffer if the

6  defendants continue their deceptive advertising. By tying up valuable FTC resources in irrelevant

7  discovery battles, the FTC will be unable to halt other scams that are harming consumers. As the

8  Supreme Court explained, "To open the door to estoppel claims would only invite endless

9  litigation over both real and imagined claims of misinformation by disgruntled citizens, imposing

10 an unpredictable drain on the public fisc. Even if most claims were rejected in the end, the

11 burden of defending such estoppel claims would itself be substantial." *Office of Personal Mgt v.*

12 *Richmond*, 496 U.S. 414, 433 (1990) (case cited by defendants); *see also In the Matter of Basic*

13 *Research, L.L.C.*, FTC Docket No. 9318, 2004 WL 2682854 (F.T.C.) (Nov. 4, 2004) at * 3

14 (striking defense of laches because it threatened to unduly broaden discovery into improper areas)

15 (case cited by defendants).

16        **3.        The Prevailing Opinion in the Ninth Circuit Is That Laches Is**

17                    **Unavailable as a Defense in a Government Action**

18        Defendants recycle their argument regarding the FTC's imaginary delay to support their

19 laches defense. The prevailing opinion in this circuit is that laches is not an available defense

20 against the government. *U.S. v. Lee*, 1995 WL 325972, at * 2 (N.D. Cal. 1995) ("The Supreme

21 Court long ago recognized as 'well settled' the principle that 'the United States is not . . . subject

22 to the defense of laches in enforcing its rights.'") (*citing U.S. v. Summerlin*, 310 U.S. 414, 416

23 (1940), and discussing policy reasons for the doctrine); *Chevron, U.S.A. Inc. v. United States*, 705

24 F.2d 1487, 1491 (9th Cir. 1983) ("The government is not bound by laches . . . in enforcing its

25 rights."); *U.S. v. Sobkowicz*, 993 F.2d 886, 1993 WL 148093, at * 4 (9th Cir. 1993) ("[I]t is

26 clearly established that a private defendant cannot assert the defense of laches against the United

27 States.").

28

1    While that is the prevailing law, defendants cite a district court case from another circuit,[3]

2   a case that addressed only the doctrine of estoppel,[4] and an antiquated Ninth Circuit case whose

3   prediction regarding the evolution of the laches defenses turned out to be wrong.[5]  Opposition at

4   5.  Defendants also cite two FTC cases for the proposition that the Court should permit their

5   "laches-type defense."  Opposition at 5 (*citing FTC v. Hang-Ups Art Enterprises, Inc.* and *FTC v.*

6   *Braswell*).  The *Hang-Ups Art* case relied on the *Ruby* decision, discussed *infra* in footnote 5, and

7   not current Ninth Circuit law.  *Hang Ups Art*, 1995 WL 914179 at *4 (C.D. Cal. Sept. 27, 1995).

8   In addition, defendants concede that the *Hang-Ups Art* and *Braswell* "decisions found that

9   sufficient 'affirmative misconduct' had been alleged," making them distinguishable from this

10  matter, where defendants have not alleged any legally sufficient misconduct.  Opposition at 6; s*ee*

11  *supra* Section B.2.  Thus, this Court should strike this defense.

12          **C.      The FTC Is Not Required to Exhaust Administrative Remedies (Third**

13                    **Defense)**

14          Defendants fail to cite one case that requires the FTC to exhaust administrative remedies

15  before bringing suit in district court.  Rather, defendants cite an irrelevant case for the ordinary

16  proposition that a court can choose not to grant an injunction.  *Weinberger v. Romero-Barcelo*,

17  456 U.S. 305, 311-12 (1982).  Returning to relevant law, numerous district and appellate courts

18  have upheld the FTC's right to bring Section 13(b) actions directly in federal court without first

19  initiating administrive proceedings.  *See, e.g. FTC v. Pantron I Corp*., 33 F.3d 1088. 1102-03 (9th

20  Cir. 1994); *FTC v. Int'l Diamond Corp.*, 1983 WL 1991, 1983-2 Trade Cas. (CCH) ¶ 65,506

---

22          [3]    *SEC v. Randy*, 1995 WL 616788 (N.D. Ill. Oct. 17, 1995).

23          [4]    *Office of Personnel Mgt. v. Richmond*, 496 U.S. 414, 423 (1990) (case where a
24  government employee gave erroneous advice to a benefits claimant and claimant asserted an
    estoppel defense based on reliance issues).

25          [5]    Defendants contend that the case *United States v. Ruby*, 588 F.2d 697, 705 n. 10 (9th Cir.
26  1978), "made clear" that laches may be a defense against the government.  Opposition at 5.
    While the *Ruby* court noted that the traditional rule on prohibition of laches may be evolving to
27  mirror the "affirmative misconduct" standard for estoppel, that change never occurred.  In the
    thirty years since the *Ruby* court raised the possibility of a new standard, the Ninth Circuit has
28  repeatedly affirmed that laches is not available against the government.

1   (N.D. Cal. 1983).  Accordingly, other courts have struck this defense.  *FTC v. Bronson Partners*,

2   2006 WL 197357 at *2 (cited by defendants); *FTC v. Braswell*, CV 03-3700 DT (C.D. Cal. 2005),

3   Opposition Attachment 3, at 15-16 (cited by defendants).  This Court should do the same and

4   strike defendants' Third Affirmative Defense.

5         **D.**      **The FTC Is Entitled to Seek Full Redress for Injured Consumers; Defendants**

6                 **Are Not Entitled to Offsets for the Cost of Their Scheme (Fourth Defense)**

7         In opposing the FTC's motion to strike defendants' offset defense, defendants primarily

8   rely on *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48 (2d Cir. 2006), *cert. denied*, 127 S. Ct. 1868 (2007),

9   and *FTC v. QT, Inc.*, 448 F. Supp. 2d 908 (N.D. Ill. 2006), *aff'd*, 512 F.3d 858 (7th Cir. 2008).[6]

10   Defendants' reliance on these cases is misplaced.  The cases do not actually stand for what the

11   Defendants claim, and the relevance of the cases is dwarfed by the seminal FTC redress case in

12   the Ninth Circuit, *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595 (9th Cir. 1993), *cert. denied*, 510 U.S.

13   1110 (1994).

14         First, *Verity* and *QT* do not stand for the proposition that profits are the correct measure of

15   consumer redress, nor do they support the argument that "many offsets from a defendant's

16   revenues are allowed in FTC cases."  *See* Opposition at 9.  In fact, the *Verity* and *QT* courts

17   merely held that where a "middleman" had siphoned off some of the ill-gotten gains of a scheme

18   before those proceeds reached the defendant, the defendant could not be liable for those proceeds

19   it never received.  *Verity*, 443 F.3d at 68; *QT*, 448 F. Supp. 2d at 974-75.  The courts made no

20   allowance for any operating expenses or amounts paid to others.  In direct sales cases, for

21   example, the *Verity* and *QT* courts would not impose an offset:  "Undeniably, in many cases in

22   which the FTC seeks restitution, the defendant's gain will be equal to the consumer's loss

23   because the consumer buys goods or services directly from the defendant."  *Verity*, 443 F.3d at

24   68; *QT*, 448 F. Supp. 2d at 975.  Defendants Medlab, Inc., Metabolic Research Associates, Inc.,

25

26      [6]    Defendants have apparently abandoned the other discrete basis they raised in their
Answer for offsetting the redress figure: that any recovery by the FTC that would not go directly

27   to consumers be reduced by taxes and postage.  *See* Answer at 5.  In its Motion to Strike, the
FTC contended that there is no legal authority for such a claim.  Motion to Strike at 5-6.

28   Defendants failed to cite any authority in rebuttal.

1    and U.S.A. Health, Inc. admit selling the weight-loss product to consumers between 2005 and

2    2007 in their Answer.  Answer (Dkt. #14) at ¶¶ 13-15; *see also* Complaint (Dkt. #1) at ¶¶ 13-15.

3    Because no "middleman" siphoned off part of their revenue, defendants cannot avail themselves

4    of the "middleman" offset in *Verity* and *QT*.

5         Second, even though relying on *Verity* (Second Circuit) and *QT* (Seventh Circuit) would

6    not lead to a different result in this matter, the Court should look primarily to the Ninth Circuit's

7    *Figgie* opinion for guidance.  The *Figgie* court explicitly authorized redress in excess of what the

8    defendants took in directly:  "[I]f the loss suffered by the victim is greater than the unjust benefit

9    received by the defendant, the proper measure of restitution may be to restore the status quo."  *Id.*

10   at 606-07 (quoting *FTC v. Int'l Diamond Corp.*, 1983-2 Trade Cases ¶ 65,506 at 68,459 (N.D.

11   Cal. 1983)).  Defendants also quote *Figgie*, but they excerpt the *Figgie* court's disapproval of the

12   district court's decision to potentially award monetary relief in excess of consumer redress.  *See*

13   Opposition at 10; *Figgie*, 994 F.2d at 607-08.  This point is inapposite here as the FTC is not

14   seeking monetary relief in excess of consumer redress.[7]  For the reasons stated above, the Court

15   should strike defendants' Fourth Affirmative Defense.

16       **E.    False or Misleading Commercial Speech Is Not Afforded First Amendment**

17            **Protection (Fifth Defense)**

18       The parties agree that *a truthful* advertisement warrants First Amendment protection.  As

19   defendants stated, "Commercial speech explaining the scientific evidence is protected by the First

20   Amendment *as long as it is truthful and not misleading*."  Opposition at 14 (emphasis added).

21   Put another way, "[c]ommercial speech that is false or misleading is afforded no First

22   Amendment protection at all."  *Gorran v. Atkins Nutritionals, Inc.*, 464 F. Supp. 2d 315, 326

23

24       [7]    In addition to *Verity*, *QT*, and *Figgie*, Defendants cite a bevy of non-binding or
         distinguishable cases.  *FTC v. Bronson Partners, LLC*, 2006-1 Trade Cases ¶ 75,171 (D. Conn.
25   2006); *FTC v. Braswell*, No. CV 03-3700-DT (PJWx) (C.D. Cal. 2003) (order denying in part
     and granting in part FTC's motion to strike); *SEC v. Lorin*, 76 F.3d 458 (2d Cir. 1996); *SEC v.
26   Blatt*, 583 F.2d 1325 (5th Cir. 1978); *FTC v. Magui Publishers, Inc.*, 1991-1 Trade Cas. (CCH)
     ¶ 69,391 (C.D. Cal. 1991) (Central District of California opinion written two years before *Figgie*
27   and affirmed shortly after *Figgie* in an unpublished decision), *aff'd*, 9 F.3d 1551 (9th Cir. 1993);
     *FTC v. Kuykendall*, 371 F.3d 745 (10th Cir. 2004).
28

1   (S.D.N.Y. 2006). Whether defendants' commercial speech is false or misleading is the

2   substantive issue of this case. If it is false and misleading, the First Amendment does not protect

3   it. If it is not false and misleading, there is no violation of the FTC Act. The First Amendment is

4   simply irrelevant in this context, and the Court should strike defendants' Fifth Affirmative

5   Defense.

6       **F.    Defendants' Alleged Lack of Notice, Even If True, Does Not Amount to a**

7           **Violation of Their Due Process Rights (Sixth Defense)**

8       In their Opposition, defendants allege that the FTC violated their due process rights by

9   failing to put them "on notice as to what [the FTC] considers a reasonable basis for a dietary

10  supplement advertising claim." Opposition at 16. Defendants fail to cite any authority that

11  supports this defense. Instead, they cite to two cases that did not hold that the FTC's, or a similar

12  agency's, enforcement policies, in and of themselves, could violate defendants' due process

13  rights.

14      Defendants' reliance on *Pearson v. Shalala,* 164 F.3d 650 (D.C. Cir. 1999), *rehearing*

15  *denied en banc,* 172 F.3d 72 (1999), is misplaced primarily because the FTC is seeking to stop

16  defendants' deceptive advertising through this very lawsuit.[8] In contrast, the *Pearson* decision

17  addressed the Food & Drug Administration's pre-approval process, which prevented defendants

18  from making certain health claims. Unlike FDA procedures, under FTC law dietary supplement

19  marketers are not required to obtain prior agency approval before making health-related

20  advertising claims. If the FTC decides to challenge such advertising claims, once they have been

21  disseminated to the public, it files a lawsuit, as was done in this case. The Commission will

22  prevail if it can establish that those claims were false or that the marketer did not have

23  substantiation (*i.e.*, a reasonable basis) for those advertising claims. *See, e.g., FTC v. Pantron I*

24  *Corp.,* 33 F.3d 1088, 1096 (9th Cir. 1994). This very lawsuit will ensure that defendants are not

25  _____

26      [8]   Defendants' reliance on *Pearson* is also misplaced because that court did not rule against
    the FDA on Fifth Amendment grounds, which defendants imply in their Opposition. The
27  *Pearson* court held that the FDA's rule, as drafted, violated the Administrative Procedures Act.
    *Id.* The court stated that its ruling did not address the Fifth Amendment argument. *Id.* at 660-
28  61.

1  deprived of any significant property interest without a fair hearing, which is the "root

2  requirement" of the Due Process Clause. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532,

3  542 (1985) (*quoting Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)).

4       Defendants also cite *Basic Research,* 2004 FTC LEXIS 211 (Nov. 4, 2004) (an FTC

5  administrative law judge ("ALJ") opinion), which actually supports plaintiff's position that

6  defendants' Sixth Affirmative Defense should be stricken.  In *Basic Research*, the ALJ struck

7  down the defense that the "Commission's regulatory standards are inherently vague and

8  unconstitutional," which is the defense raised here.  *Id*. at *10-11 (described as the "Reason to

9  Believe and Public Interest" defense).  The ALJ agreed with complaint counsel that  "any

10  attempts to discover the Commission's reason to believe and public interest determinations

11  [would prejudice] Complaint Counsel by unduly broadening discovery into improper areas such

12  as the mental process of the Commission."  *Id*.  As seen in subsequent discovery rulings, the ALJ

13  in *Basic Research* precluded discovery as to how the Commission interprets the FTC Act's

14  substantiation standards for advertising claims even though defendants argued that such discovery

15  was relevant to their due process defense discussed below.  *Basic Research*, 2006 FTC LEXIS 18,

16  at *2-6 (Feb. 21, 2006).  In ruling on the motion to strike, the ALJ stated that "[t]he issue to be

17  tried is whether [defendants] disseminated false and misleading advertising, not the

18  Commission's decision to file the Complaint."  *Id*. at *10.  Those are the issues to be tried here as

19  well.  Relevant case law under Sections 5 and 12 of the FTC Act will control the outcome of this

20  case, not the FTC's enforcement approach, as articulated in its policy statements for dietary

21  supplements.  *Id.* at *3-4.

22       Defendants erroneously cite the ALJ's refusal to strike a due process defense as support

23  for their position.  Opposition at 15.  While the ALJ in *Basic Research* denied complaint

24  counsel's motion to strike a due process defense,[9] the ALJ's refusal to strike was limited to

25

26       [9]   The ALJ in *Basic Research* applied a higher standard for ruling on motions to strike than
articulated in 12(f) of the FRCP.  *Basic Research*, 2004 FTC LEXIS 211, at *3 (*citing Dura
27  Lube Corp.,* 1999 FTC LEXIS 251, at *4-5 (Aug. 31, 1999)).  The ALJ in *Dura Lube,* from
which this standard arose, explained that an ALJ could deal with the propensity for a defense to
28  "substantially or unnecessarily expand the scope of discover" through the Commission rules on

1  allowing defendants to "challenge the adjudicatory proceeding itself as violating their due process

2  rights." *Id*. at *5.  This is not the defense raised by Defendants.  As articulated in their

3  Opposition, defendants' due process defense does not purport to challenge this proceeding, as in

4  *Basic Research,* or even the FTC Act itself.  Opposition at 14-16.  For the reasons stated above,

5  the Court should strike defendants' Sixth Affirmative Defense.

6         **G.**    **"Inconsistent Enforcement" Is Not a Defense in a Government Action Unless**

7                  **Defendants Allege a Discriminatory Purpose for the Prosecution, Such as**

8                  **Race, Religion, or Other Arbitrary Classification (Sixth and Thirteenth**

9                  **Defenses)**

10       Defendants allege that the FTC discriminated against defendants by bringing this action

11  and "is taking a position against the defendants that is inconsistent with the relief sought in prior

12  cases."  Opposition at 17.  Defendants assert two claims: (1) that the FTC improperly chose to

13  prosecute the defendants while declining to prosecute other companies in the dietary supplement

14  industry, and (2) that defendants in other FTC matters received more favorable settlement offers.

15  Opposition at 16-17.  Both defenses are legally insufficient.

16       Before addressing defendants' arguments, plaintiff notes that defendants do not challenge

17  the legal framework for these issues outlined in plaintiff's Motion to Strike:  specifically, that to

18  prevail on a claim of discriminatory enforcement, defendants must sufficiently plead why the

19  FTC's decision to prosecute defendants was based on an unjustifiable standard such as race,

20  religion, or other classification that violates the Equal Protection Clause of the Constitution.

21  *United States v. Armstrong*, 517 U.S. 456, 464-65 (1996); *In re Modern Mktg Serv., Inc., et al.*, 69

22  F.T.C. 1077, 1082 (1966) (rejecting selective prosecution claim because the complaint did not

23  allege "the Commission's action was in any way the result of discrimination or bias").[10]  Nor do

24  defendants explain how Mr. Holmes, a Caucasian male, or the corporate defendants are

25

26  discovery.  *Dura Lube Corp.,* 1999 FTC LEXIS 251, at *5.

27      [10]   Commission reasoned that "The mere assertions of such a plea, without more, cannot

28  enable a respondent to interrogate Commission employees or to rummage through investigative
reports and staff memoranda in the hope that something will turn up to support the claim."  *Id.*

1  the target of racial, gender, religious, or other recognized forms of discrimination.

2          **1.      "Selective Prosecution" Is Not a Defense**

3          Defendants' first claim – that the FTC is discriminating against them because it did not

4  pursue legal action against defendants' competitors who made similar claims – fails as a matter of

5  law.  Simply alleging similar wrongdoing by competitors is not a legitimate argument supporting

6  a claim of selective prosecution.  *United States v. Leggett & Platt*, 542 F.2d 655, 658 (6th Cir.

7  1976) ("purported defense of 'discriminatory enforcement' is, as a matter of law, no defense").

8  Such an argument is analogous to a driver arguing that he should get a "free pass" on a speeding

9  ticket because other people were also speeding.  Allowing such a defense would mean that

10  "unlawful practices [would be] rarely, if ever, corrected."  *In re C. E. Niehoff & Co.*, 51 F.T.C.

11  1114, 1153 (1955).

12          Defendants cite distinguishable antitrust jurisprudence to support their argument that the

13  FTC may not arbitrarily destroy one competitor in an industry.  Opposition at 16 (*citing primarily*

14  *FTC. v. Universal-Rundle Corp.*, 387 U.S. 244, 251 (1967)).  These cases, however, are specific

15  to antitrust violations where there are very few competitors in an industry.  In these unique

16  situations, courts questioned whether an industry-wide rule or investigation would better serve the

17  interest of the Clayton Act, because by sacrificing a small competitor "the giants in the field

18  would be the real benefactors – not the public."  *Universal-Rundle*, 387 U.S.  at 249.  These

19  public policy concerns are not at issue in the dietary supplement field, where there are thousands

20  of competitors and the public benefits from truthful advertising.

21          Moreover, defendants' glossed over the core principle of the *Universal-Rundle* case:  that

22  "the Commission alone is empowered to develop [an] enforcement policy best calculated to

23  achieve the ends contemplated by Congress and to allocate its available funds and personnel in

24  such a way as to execute its policy efficiently and economically."  *Universal-Rundle,* 387 U.S. at

25  251 (holding that courts must give deference to the FTC's enforcement determinations) (cited by

26  defendants); *see also Weight Watchers Int'l., Inc. v. FTC*, 47 F.3d 990 (9th Cir. 1995) (giving

27  deference to FTC's decision to address violations in the weight-loss industry by adjudication,

28  rather than through rulemaking).

1

### 2.    There Is No Constitutional Right to Settlement

2      Defendants' next argument – that the FTC sought different relief against violators in other

3   FTC matters – also fails.  Because the FTC's prayer for relief in this case is identical to the prayer

4   for relief in numerous FTC district court complaints, plaintiff assumes that defendants' claim of

5   "inconsistent relief" refers to the FTC's decision to prosecute this case, rather than settle on

6   defendants' terms.  However, defendants do not have a constitutional right to a settlement.

7   *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977) ("[T]here is no constitutional right to plea

8   bargain; the prosecutor need not do so if he prefers to go to trial."); *Skoor v. Tilton*, 2008 WL

9   152144, at *5 (S.D. Cal. 2008) ("The claim is that people similarly situated have been offered

10  better deals.  That by itself finds no support as discriminatory enforcement in any case.").  Thus,

11  defendants' claim of "inconsistent relief" is no defense.

12

### 3.    Defendants Have Served Burdensome Discovery on Plaintiff in Search

13      of Evidence for Their Insufficiently Pled and Legally Null "Selective

14      Prosecution" Defense

15      Defendants' claims of selective prosecution and inconsistent enforcement have practical

16  ramifications for this case.  Defendants have proffered on plaintiff broad discovery regarding the

17  FTC's policies and practices.  *Schroeder Declaration*, Exhibits 1-2 (examples of defendants'

18  discovery requests).  Unless the Court strikes defendants' "inconsistent enforcement" defense,

19  this case will likely be delayed while the parties slog through a protracted discovery battle on

20  irrelevant issues.  Accordingly, plaintiff respectfully requests that the Court strike Defenses Six

21  and Thirteen in the interest of judicial economy.

22

### H.    The FTC Can Not Waive its Duty to Enforce the Law; Nor Does a Money-

23      back Guarantee Waive a Claim under the FTC Act (Ninth Defense)

24      Defendants argue that the FTC has waived its claims against them because: (1) injured

25  consumers separately contracted with defendants and may have waived their rights on an

26  individual basis; (2) defendants offered consumers a money-back guarantee; and (3) the FTC did

27  not immediately file suit against defendants.  All three arguments fail.  First, the contract-based

28  defense is inapplicable because defendants are not in privity with the Commission, and the

1  Commission has asserted no cause of action based on the law of contracts.  Instead, the

2  Commission has asserted statutory causes of action under Sections 5 and 12 of the FTC Act.  The

3  FTC's right to bring this action is not derivative of the rights of individual consumers, and thus

4  whether any consumer "waived" his own claim is irrelevant to this case.

5       Second, a money-back guarantee is no defense to a charge of deceptive advertising.

6  *Sears, Roebuck and* Co., 95 F.T.C. 406, 518 (1980), *aff'd*, 676 F.2d 385 (9th Cir. 1982) ("A

7  money-back guarantee is no defense to a charge of deceptive advertising . . . A money-back

8  guarantee does not compensate the consumer for the often considerable time and expense"

9  incident to obtaining a refund.).  Finally, defendants' "delay" argument mirrors their allegations

10  regarding laches and estoppel.  *See* supra Sections B.II and B.III.  As explained above, the FTC

11  did not delay in filing this case, and the doctrine of laches does not apply to the government.

12  Thus, the Court should strike defendants' Ninth Affirmative Defense.

13       **I.     Cessation of Illegal Activity, Especially after Government Intervention, Does**

14            **Not Make an Action Moot (Eleventh Defense)**

15       Defendants allege that this case is moot because "the business practices challenged by the

16  FTC have ceased and are not likely to continue."  Opposition at 20.  However, mere cessation of

17  illegal activity is not legally sufficient grounds for "mootness."  As defendants concede, they

18  have the heavy burden of showing that there is no reasonable expectation that they will repeat

19  their wrongful conduct.  *Id*. at 19.  Defendants' only factual support for this defense is that they

20  ceased their conduct before the FTC filed the Complaint.  *Id.* at 20.  Defendants fail to allege,

21  because it is not true, that they stopped running the problematic advertisements before the FTC

22  notified them of its investigation into defendants' business practices.  Thus, defendants cannot

23  satisfy their heavy burden of showing there is no reasonable expectation that they will repeat their

24  wrongful conduct, and the Court should strike their Eleventh Affirmative Defense.

25       **J.     The Existence of an Adequate Remedy at Law Is Not a Defense in an FTC**

26            **Action (Tenth Defense)**

27       Defendants allege that the FTC is not entitled to consumer relief because there is an

28  adequate remedy at law.  In *Hang-Ups Art Enterprises*, previously cited by defendants, the court

1    found that "[t]he existence of legal remedies for individual consumers under state law does not

2    bar the FTC from seeking equitable relief under the FTC Act; to find otherwise would nullify

3    much of the FTC Act." 1995 WL 914179 at *4 (C.D. Cal. Sept. 27, 1995).[11]  Accordingly, the

4    court should strike defendants' Tenth Affirmative Defense.

5    **III.    Legal Authority Does Not Support Defendants' Demand for a Jury Trial**

6            Defendants failed to cite one case entitling them to a jury trial in an FTC, SEC, or similar

7    governmental action for equitable relief.  Rather, defendants claim that the FTC is seeking a penal

8    remedy because it "is seeking a damage award well in excess of the monies [defendant Holmes]

9    received."  Opposition at 21.  To support their arguments, defendants grossly misconstrue the

10   case *FTC v. Figgie Int'l*, 994 F2d. 595 (9th Cir. 1993), and suggest that the *Figgie* court

11   considered consumer redress punitive.  In fact, the *Figgie* court expressly stated that Section 13 of

12   the FTC Act "gives district courts the power to order equitable relief," including restoring *all*

13   funds to injured consumers.  *Id.* at 605-6.  As mentioned *supra* in Section D, the Figgie court

14   objected to a specific provision in the district court's order that required Figgie to pay additional

15   funds to a consumer education campaign, a remedy the FTC is not seeking here.  *Id.* at 607.

16           Unable to make any legal argument in support of their jury demand, defendants resort to

17   the claim that because they pay taxes, any monetary judgment against them for consumer redress

18   become "double payments" that are "penal" in nature.  Opposition at 21.  However, it is well-

19   settled case law that courts may order restitution to consumers as an equitable remedy under

20   Section 13(b).  *FTC v. H. N. Singer, Inc.*, 668 F.2d 1107, 1112 (9th Cir. 1982).

21           As a last resort, defendants suggest that the Court should bifurcate the liability and relief

22   issues as the court did in *FTC v. Minuteman Press, LLC*, 53 F. Supp. 2d 248, 251 (E.D.N.Y.

23   1998).  Defendants' reliance on *Minuteman* is surprising, given that *Minuteman* was a bench trial

24

25

26           _____

27           [11]   Defendants reliance on *FTC v. Evans Products Co.*, 775 F.2d 1084 (9th Cir. 1985) is
     misplaced.  The court's statement there that the consumers could "still" bring state actions was
28   merely a gratuitous comment, essentially consoling the FTC that all would not be lost if the court
     did not enter an injunction.  *Id.* at 1089.

where the Judge ruled on both liability and relief.[12]  This Court should also rule on all aspects of

this case and strike defendants' unfounded jury demand.

**IV.  Because Defendants Clarified That They Are Not Moving to Dismiss the Complaint, Plaintiff Withdraws its Request to Deny Such Motion**

Defendants' Answer contains a section titled "Demand for Attorney's Fees," in which

defendants request that the Court dismiss the FTC's Complaint with prejudice.  Because plaintiff

was unclear if defendants were moving to dismiss the Complaint, it requested that the Court deny

any such motion as premature.  Defendants clarified in their Opposition that their statement

regarding dismissal was intended to be a prayer for relief; therefore, plaintiff withdraws its

request that the Court deny defendants' dismissal request.

**V.    Conclusion**

For the reasons stated above, plaintiff respectfully requests that the Court strike

defendants' Second through Sixth, and Ninth through Thriteenth Affirmative Defenses, and deny

defendants' jury demand.

Respectfully submitted,

DATED: July 3, 2008                    /s/ Sarah Schroeder

KERRY O'BRIEN
SARAH SCHROEDER
EVAN ROSE
Attorneys for Plaintiff
Federal Trade Commission
901 Market Street, Suite 570
San Francisco, CA 94103
Telephone:  (415) 848-5100
Fax: (415) 848-5184
Email: kobrien@ftc.gov

---

[12]    The Court did not bifurcate the issues to invite a jury into the process; instead "[t]he purpose of this decision [was] to provide Findings of Fact and Conclusions of Law" and "[t]he goal of the second phase of the trial, of course, [was] to fashion appropriate redress." *Minuteman*, 53 F. Supp. 2d at 251, 261.

1

## CERTIFICATE OF SERVICE

2

3      This is to certify that on July 3, 2008, I served true and correct copies of the attached:

4      •      *Plaintiff's Reply to Defendants' Opposition to Motion to Strike Affirmative*

5              *Defenses and Jury Demand*

6      •      *Affidavit of Sarah Schroeder*

7      by filing the above documents with the Court's ECF System and e-mailing the documents

8      to:

9

10     SHELDON S. LUSTIGMAN
       ANDREW B. LUSTIGMAN
11     The Lustigman Firm, P.C.
       149 Madison Avenue, Suite 805
12     New York, NY 10016
       E-mail: andy@lustigmanfirm.com
13     E-mail: shelly@Lfirm.com

14     ROGERS J. O'DONNELL
       RENEE D. WASSERMAN
15     ALEX J. MORRIS
       311 California St., 10th Floor
16     San Francisco, CA 94104
       E-mail: RWasserman@rjo.com

17
       Attorneys for Defendants
18

19

20          I swear under penalty of perjury that the foregoing is true and correct.  Executed this

21     July 3, 2008, at San Francisco, California.

22

23                                              /s/ Sarah Schroeder
                                                Sarah Schroeder
24

25

26

27

28